O’NIELL, C. J.
 

 I respectfully dissent from the decree rendered in this case, on the ground that the confessions, by means of which ¡the defendants were convicted, were not free or voluntary confessions. As to Mose Conner, my opinion is that the judge’s charge to the jury on the law of conspiracy was wrong, and that the jury, under a misunderstanding of the law, convicted Conner of a murder which he had nothing ¡to do with. He may have been implicated in the scheme to rob the lottery shop; but for that he would not deserve the penalty of death. He was not near the scene of the shooting, did not leave the lottery shop when the robbers ran away, and in fact did ¡not take part even in the crime of robbery. Conceding, for the sake of argument, that Conner was a party to the conspiracy to rob the lottery shop, the admitted and undisputed facts of this case are such that he could not legally be found guilty of the murder that was committed. The doctrine of the decision in State v. Taylor et al., 173 La. 1010, 139 So. 463, is not applicable to Mose Conner’s case.
 

 Adverting to the confession of Eli Terrell and that of Thomas Eranklin, it is not necessary that the confessions should have been procured by physical punishment, but it is sufficient that they were procured by undue persuasion, to make them inadmissible for being not free and voluntary confessions, according to the eleventh section of the Bill of Rights, in the Constitution of Louisiana. It took five days for the police officers at the twelfth precinct station to persuade Terrell ■to make a confession. The purpose of holding him at the twelfth precinct station, instead of taking him to the parish prison, was to persuade him to confess.
 

 The Constitution of the United States and the Constitution of every state guarantees
 
 *799
 
 that a person shall not he compelled to give evidence against himself in any criminal case, or in any proceeding that might subject him to criminal prosecution; and the new Constitution of Louisiana, in section 11 of article 1, adds this protection to a person under arrest: “No person under arrest shall be subjected to any treatment designed by effect on -body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made.” My opinion is that the present case should be governed by the rulings in such cases as Bram v. United States, 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568; Ziang Sung Wan v. United States, 266 U. S. 1, 45 S. Ct. 1, 69 L. Ed. 131; State v. Roberson, 157 La. 974, 103 So. 283, 287; State v. Hayes, 162 La. 310, 110 So. 486; and State v. Scarbrough, 167 La. 484, 119 So. 523. In Roberson’s Case, the author of the opinion cited the previous -decisions on the subject, and said:
 

 “But our own Constitution of 1921 goes much further than does the Constitution of the United States, or any former Constitution of this state, perhaps even further than the Constitution of any other state. It says,” etc.
 

 “And our conclusion is that any persistent effort to Obtain a statement from a person in custody, by repeatedly subjecting him to cross-examination after he has refused to make such statement, is ‘treatment designed by effect on body or mind to compel a confession of crime’; and that a confession so obtained cannot be used against an accused.”
 

 My own opinion is that the system which seems to prevail in this city, and in other large cities, by which men arrested on suspicion of having committed a crime are detained by the arresting officers -in a police station — in New Orleans it is usually the ninth precinct station or ithe twelfth precinct station, — and there prodded with importunate questioning, with the view of inducing, if not compelling, the prisoner to make a confession — is violative of both the spirit and the letter of the law. When a confession of guilt has -been obtained in that way, the trial of the case in open court is no protection at all to the party accused, unless his testimony as to whether he made a free and voluntary confession is given as much consideration as is given to the testimony of all of the policemen who have taken part in the inquisition. It will not do to say that it is incredible that a police officer would use any undue influence, or resort to any harsh or unfair treatment, to persuade a prisoner to make a confession of guilt. It is the system itself that is wrong, because it is a substitution of an inquisition by a squad of police officers for the fair and impartial trial which the Constitution guarantees to every one accused of crime. A departure from that guaranty cannot be conducive to the suppression of crime, because it causes resentment against the enforcement of the law, and disrespect for the administration of justice. The end never justifies the means.