Statement of the Case.
NICHOLLS, J.
The defendants were jointly indicted for the murder of Clarence Compton. On motion of the district attorney a severance was granted. Before this a motion for a change of venue on the part of both defendants jointly had been made. After a severance had been granted, the case as to Sylvester Owen was set for trial. The motion for a change of venue as to him was partially tried and abandoned by his counsel. The case was then taken up for the trial on the merits as to Sylvester Owen. On the trial he was found guilty as charged without capital punishment, and sentenced by the court with imprisonment at hard labor in the state penitentiary for the balance of his natural life. The case -was subsequently tried ■opt the merits as to Alfred Owen, and he was found “guilty of manslaughter” and sentenced by the court to imprisonment at hard labor in the state penitentiary for 20 years. He has appealed.
One transcript contains the proceedings in the cases of both Sylvester and Alfred Owen, and both eases were argued at the same time. Counsel waived consideration of many of the bills of exception, and it is difficult to remember on which bills the appellant in this particular case relies. Those involving the correctness of the action of the trial judge in overruling the objection of the defendant to allowing various persons to serve as jurors in the case on the ground that they had formed or expressed an opinion as to the guilt of the accused are certainly relied on. There are three bills of exceptions relating to that action. They refer to the jurors Crow, Lester Erskine, Haley, Settoon, and the two Fowlers (Transcript, pages 60 to 78).
Crow, examined on his voir dire, testified that there was a good deal of talk at' the time of the killing of Compton. Nearly every one was talking about it. From what he heard at the time he had formed an opinion as to the guilt or innocence of the accused. Had heard the matter discussed since. He had not changed the opinion which he had formed at the time of the killing. He had expressed that opinion at one time to one or two persons. He had not expressed a very positive opinion. It was just based on what he had heard. Those who did express themselves seemed to be of one opinion. The opinion which he had expressed agreed with that of the majority of those who did express themselves. He felt that the opinion which he had expressed was Correct. From what he had heard his opinion was a fixed one. It would take different evidence to remove it. He did not know that it would take so much evidence. He had just heard hearsay and nothing further. He did not know that what he had heard were facts or not. He believed they were. He was a brother of Mr. Crow who had served as a juryman on the jury which had convicted Sylvester Owen. His brother had not gone over the facts of the case in his presence since the trial of Sylvester Owen. He lived about *649 half a mile from where his brother lived. On examination by the court, Crow said he was not a relative of the accused; that he had never discussed the case with any of the witnesses ; that the opinion he had formed was from the mere community gossip; that opinion would yield to the testimony; that he had no bias or prejudice in any way for or against the accused. Asked whether, “if selected as a juror to try this case, he thought that his mind was in such a condition that he could go into the jury box and render a fair and impartial verdict according to the law and evidence, totally disregarding anything that he had heard heretofore about the case,” he replied “that he did.” Asked whether the fact that his brother was a juror in the case against Sylvester Owen would have any weight or effect whatever in his own consideration of the case, he replied “that it would not” ; that he knew of no reason whatever which would preclude him from making a fair and impartial juror in the case.
Lester, examined on his voir dire, said that he had expressed sometimes his opinion about the ease very positively, because he had felt very positive about it; that he did not (when being questioned) feel so very positive about it; that he would have that feeling if he went on the jury unless the evidence was right the other way; that, feeling as he did, and having expressed himself as he did, he believed that he could give the accused a fair and impartial trial.
Erskine testified on his voir dire that he had expressed his opinion about the case on numerous occasions to different persons. Had heard the case discussed quite a number of times in the neighborhood where he lived, by persons who had heard of it from rumors. 1-Ie had himself expressed his opinion, though not frequently. He could lay that opinion aside and decide the case according to the law and the evidence if taken as a juror. He had no bias nor prejudice whatever against accused; was not related to him by blood or marriage. His opinion would yield readily to testimony. It was not at all a fixed opinion. It was an opinion fixed so far. It was not a serious opinion. 1-Ie attached no importance to it. 1-Ie had no right to know that his opinion was correct. 1-Ie expressed it only from what he had heard.
Asked by the court whether “he knew the condition of his mind and feeling in this case, and whether if accepted as a juror he could try the case absolutely and exclusively upon the testimony produced upon the trial and according to the law, given to him by the court,” he replied “that he could.”
Haley on his voir dire testified: That he had heard of the killing through rumors. That he was not acquainted with the deceased and had seen the accused that morning for the first time. 1-Ie was not connected by marriage nor related to either of them. He had no bias nor prejudice which would influence him. He had formed an opinion, but did not know whether he had expressed it or not. That he could try the case as a juror as fairly and impartially as if he had never heard of it. Had heard no one discuss the matter by any one claiming to know the facts of the case. Had read the account of the killing given in the “Pioneer Enterprise.” There was not any more in that paper than he had heard before. I-Iad not heard discussion about the case many times. The reports which he heard and read did not make any serious impression upon him. 1-Ie had expressed an opinion two or three times. Did not know whether he had expressed himself seriously or lightly at the time, but he expressed his opinion. He merely stated what he thought. Nothing had occurred since he had expressed the opinion to change his opinion, nor had he heard anything to do so. He had heard very little about it since. He did not know whether the opinion was right or wrong because he knew nothing about it *651 beyond wbat be bad beard. He thought it was right (be supposed) at the time. That opinion would have no weight whatever with him nor any effect nor influence upon him in considering the testimony and arriving at a .verdict.
L. P. Fowler testified on his voir dire: That he was not acquainted with the deceased. That he had only met the accused a few times. That he was not connected by marriage nor related by blood to either. That he had no bias nor prejudice in the matter. That he was prepared to sit in the jury box and try the case fairly and impartially on the testimony which might be introduced at the trial and without reference to anything he may have heard. I-Iad not formed nor expressed an opinion about the guilt or innocence of the accused. He had heard nothing except by hearsay and did not know who the witnesses were. 1-Ie had formed an opinion from hearsay; a good many persons had discussed it. Supposed that his own opinion was that of the majority’s expression of opinion, as it was based on the same evidence — hearsay. I-Iis own opinion was formed from his confidence in the reports he had heard. He believed the reports he had heard. He had no right to disbelieve until he was convinced by evidence. Evidence would convince him. It would require evidence to convince him. The opinion which he said would require evidence to convince him he was wrong would have no weight with him in arriving at a verdict. Asked whether he would the more readily accept and believe evidence that agreed with that opinion and the information on which the opinion was based than evidence that did not agree with the opinion and reports, he replied that he did not think he would if he were a juryman. The opinion which he had formed was not such an opinion as would weigh with him or affect him upon the trial of the ease. That he would go according to the evidence. That nothing he had heard would affect him whatever. That he knew of no cause why he would not make a fair and impartial juror upon the trial of this ease.
Settoon on his voir dire testified: That he had not heard any of the witnesses relate the facts bearing on the case. He had heard the case discussed by outside parties. He had not formed an opinion as to the guilt or innocence of the accused parties from what the people said. He was not connected by marriage nor related to the accused parties. Was not acquainted with the deceased. Had met the accused a few times. Had no bias for nor prejudice against him which would influence him if he were taken as a juror. He did not know any reason why he could not give this party a fair and impartial trial.
On cross-examination, being asked whether he had not told Mr. Ellis (the district attorney), before the stenographer began to take down his answers, he said that he had formed an opinion, but had not expressed it, he replied that he had formed an opinion all right, but had not told any one what it was; that he had formed that opinion when he first heard of the case; that it would require evidence to change that opinion. Asked whether he would not be more apt to believe testimony that agreed with his opinion than testimony that did not, he replied that if it agreed with what he thought he could not help but believe it.
On redirect examination by the state, he was asked, “If the testimony did not agree with the opinion he then had, would he decide the case according to what he thought about it or according to the testimony?” To this question, he answered that he would decide by the testimony in the court as the testimony that he knew was just everybody talking about it.
He was then questioned by the court and asked, “Did he think that he could go into the jury box and try the case exclusively *653 upon the evidence introduced upon the trial?” To this question he answered, “he thought so.”
He was then asked, “Would what you have heard have any weight or effect whatever with you upon the trial of this case?” He replied that he did not know that it would. He was then asked, “Do you know of any reason why you could not give the accused party a fair and impartial trial?” His reply was that “he did not.”
Chambliss testified on his voir dire: That he had not heard any of the witnesses relate the facts of the case. That he knew nothing of the case except through hearsay. That he was not acquainted with either of the parties and had no bias or prejudice which might influence him in trying the case. That he had formed an opinion as to the guilt or innocence of the parties. Asked whether “that opinion was of a fixed nature, so that it might weigh with you on the trial of this case, or could you disregard it and try the case entirely upon the testimony introduced here?” he answered that he believed he could disregard it “and try it entirely upon the testimony.” On cross-examination by the defendants’ counsel, he said that the opinion which he had formed would have no weight with him in deciding the case; that he thought if taken as a juror that he could listen to the testimony and reach a conclusion just the same as if he had never heard of the case. Asked whether “he would the more readily believe testimony that agreed with his opinion and the information on which his opinion was based, or testimony that did not agree with what he thought or what he had heard,” he answered, “Well, if there was a good deal of conflicting testimony on either side, X think I would believe the testimony that agreed with my opinion.”
Counsel of defendant stating, “The case you state is apt to happen,” asked him, “In that event your opinion would have some weight with you in arriving at a verdict, would it not?” To this he replied, “I do not know that it would.” On re-examination by the state, he was asked, “If the testimony was different from the reports which you have already heard, would you try the case on your testimony or on the reports?” To this he answered: “I would try the case entirely upon the testimony.” When asked by the court, “Is your mind in such a state that you can exclude any testimony or anything you have heard about the case and try it exclusively upon the testimony that you hear upon the trial of the ease?” To which he answered, “I can.” He was then told by the judge:
“It is the law that all jurors must try a case solely and alone upon the testimony introduced, and in their deliberations their minds must be in such a condition about the case as to be able to disregard anything- that they have previously heard.
“If the court should charge you to that effect, do you think, under such instructions, you can make a fair and impartial juror in this case.”
To this question he answered, “I think I can.”
Opinion.
J. C. Fowler’s answers on his voir dire were such as to clearly entitle him to serve as a juror.
In the per curiam to the bills of exception, the judge said you cannot well judge the qualification- of a juror by culling out a few of his answers. The examination in chief by the state was not transcribed, but all of the juror’s testimony thoroughly satisfied the court that he was a competent and qualified juror.
The trial judge, in passing upon the qualification of the four jurors as proper persons to serve as jurors upon the trial of the appellant, was guided and controlled by the decisions of this court for many years declaring the test to be applied in dealing with that question.
*655 None of the four were connected by marriage or related by blood with either the accused or the deceased; none had bias or prejudice influencing them; none knew of the matters involved further than by rumor and hearsay; all testified that, if selected as jurors, their mind was in such a condition that they could go into the jury box and render a fair and impartial verdict according to the law and the evidence, laying aside any preconceived opinion on the ease, and disregarding what they had heard before; that they knew of no reason which would preclude them from rendering such a verdict. It is true that some of these parties had in the first answers given by them used expressions from which it appeared that they had allowed the rumors which they had heard to gain lodgment in their minds to the extent that, until they could receive testimony bearing on the facts, the impressions that they had received from the rumors would remain.
Theoretically the minds of persons tendered as jurors should be absolutely free from even impressions in regard to the case about to be submitted for decision. Referring to that matter this court said, in State v. George, 8 Rob. 537:
“However desirable it may be to procure jurors whose minds are prepared to receive their impressions alone from the testimony submitted to them, yet the experience of almost every term of a district court held in the country parishes teaches that this is often impracticable. ' The ends of justice require that such offenders should be brought to punishment, and they will not be permitted to shield themselves from the consequences of their crime by perpetrating crimes Of such heinousness as to excite universal inquiry, which inquiry leads to the formation of an opinion; yet such would be the result if jurors could be rejected merely because from vague and floating rumors they had formed some indefinite opinion which upon inquiry often proves to be merely hypothetical. To disqualify the juror, the opinion should have been deliberately formed, as is commonly the case where he has heard the evidence 'before the examining justice or upon a former trial of the same case, or has heard the statements of the principal witnesses. These become proper subjects of inquiry when the juror is presented to the prisoner. Much must necessarily be left to the judgment of the trial judge in ascertaining whether the mind of the juror be open to receive impressions from the evidence, or whether his opinion has been so deliberately formed as to resist those impressions.”
On the trial of Aaron Burr, when the same question arose, Chief Justice Marshall said:
“Were it possible to obtain a jury, without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by the court is that light impressions which may be fairly supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him. Those who try the impartiality of a juror ought to test him by this rule.” Burr’s Trial, p. 410, 25 Fed. Cas. 50.
The trial judge, after the consideration of the examination of the parties as a whole, came to the conclusion, under the rule announced for the guidance of judges in the 8 Rob. Case, and in repeated decisions since that time, that those parties should not be rejected as jurors. They were ultimately accepted by the accused, and the case went to trial. That trial resulted in the conviction of appellant for manslaughter. He applied for a new trial on the ground that the verdict was contrary to the law and the evidence. The district judge held that this was not the case. He had full knowledge of all the testimony given in the case and the benefit of his knowledge of the condition of mind of the jurors as exhibited on their voir dire, and nevertheless he reached the conclusion that there was no judicial ground for interference. We are, in the face of that condition of things, asked to reverse the verdict and set aside the judgment on the ground that he was not tried by a fair and *657 impartial jury. This we would not he justified in doing.
We do not think that the accused was prejudiced by the refusal of the court to grant a change of venue. There was, of course, considerable feeling in the parish at the time of the homicide; hut there was no difficulty in obtaining a fair and impartial jury. State v. George, 8 Rob. 537. We do not think that appellant was prejudiced by the refusal. Defendant in his motion for a uew trial did not refer to it as a ground of complaint, and the verdict rendered of manslaughter against the appellant under an indictment for murder does not indicate the existence of any strong feeling against him.
The fifth bill of exceptions recites that after the state had offered all its evidence in chief, and after the accused in presenting his defense had offered three witnesses, John Maddox, John Horseworth, and Mrs. Maguire, to prove dying declarations made by the deceased on two separate occasions, which testimony was received and heard by the jury, and after the accused had closed his defense, the state in rebuttal caused Bob Guier, H. B. Lawton, and E. M. Atkins to be sworn for Ihe purpose of testifying that the deceased had subsequently to the tragedy, and prior to his death, made dying declarations contradictory of and inconsistent with the declarations testified to by the three witnesses for the accused, to which testimony offered by the state the accused excepted for the reason that the same was irrelevant, immaterial, and not in rebuttal, and for the further reason that the state should have offered the said testimony in chief, which objections were overruled by the court for the reason that the said testimony was in rebuttal and tended to impeach . the testimony of the three witnesses for the accused. To this bill the judge made the following per curiam:
The reason of the court in overruling defendants’ objection is not correctly stated. The dying declaration as given by Lawton and others was not tendered to impeach “other witnesses,” but tended to contradict the version of the dead man’s declaration as related by Maddox and others, and for that reason was in rebuttal in the showing made by them in their testimony. The word “impeach,” in the sense used here, is technical and 'misleading, because there was no attempt to impeach with declarations made by Lawton and others, except in so far as. they rendered it improbable that Maddox was correctly relating what the dead man had actually intended to say.
The defense witnesses testified that on a certain evening Compton, the deceased, stated that he (Compton) made the first and last shot. The state then offered to introduce witnesses to show that Compton on the same evening stated that Owens made the first two’ shots. The court considered this strictly rebuttal testimony and not the line of testimony the state should have brought out in making its case in chief under the line of testimony that was introduced upon the trial. There were seven witnesses present at the scene of the homicide and who testified in this case. Compton’s statements were first brought out by the defense and then rebutted by the state.
We find no error in the ruling of the trial judge in the matter covered by the bill of exceptions.
On the whole case, we find no legal ground for reversal. The judgment appealed from is therefore affirmed.