FOURNET, Justice.
 

 The defendant, Mrs. Annie Beatrice Henry, is prosecuting this appeal from her third conviction and sentence to die for the murder of J. P. Calloway on February 14, 1940, relying for the reversal thereof on certain errors allegedly made during the course of the trial, to which objections werei
 
 *880
 
 timely made and bills of exceptions reserved.
 

 It appears that in order to carry put a preconceived plan to rob a bank in Arkansas, Mrs. Henry and her accomplice, Finnon Burks, held up the deceased, with whom they had secured a ride while hitchhiking, and robbed him, Mrs. Henry shooting him while he was
 
 on
 
 his knees begging for his life after she had caused him to remove his clothing and had ordered her accomplice to destroy the same in order that their pursuit might be hindered by the delayed identification of Calloway’s body in the event it was found.
 

 On February 27, 1940, Mrs. Henry was jointly indicted with Burks for Calloway’s murder, but, upon her own motion, was granted a severance. Burks was tried first and was convicted and sentenced to die, which conviction and sentence were affirmed by this court on November 4, 1940. State v. Burks, 196 La. 374, 199 So. 220. On the same day this court set aside Mrs. Henry’s first conviction and sentence to death and granted her a new trial. State v. Henry, 196 La. 217, 198 So. 910. On May 26, 1941, defendant’s second conviction and sentence were set aside. 197 La. 999, 3 So.2d 104.
 

 Bills of Exceptions Nos. 1, 2, and 3 are interrelated, all being levelled at the overruling of defendant’s motion for the recusation of the Honorable Griffin T. Hawkins, the district attorney, and his assistant, the Honorable Joseph J. Tritico. The bases of this motion are (1) that a close friend of Mrs. Henry’s consulted Hawkins arid Tritico with the view of employing them to assist her court-appointed attorneys in the prosecution of her appeal before the Supreme Court after her first conviction, and (2) that relatives of FinnonBurks, prior to the time Mrs. Henry was granted a severance, consulted Hawkins and Tritico with the view of employing them to defend Burks — -Tritico, without Hawkins knowledge, appearing in court as Burks’ tentative attorney when he was arraigned — -and, again, after his conviction, with the view of employing them to assist-in presenting his petition to the pardon-board.
 

 In their answer to the motion, Hawkins- and Tritico admitted they were approached by a friend of Mrs. Henry’s and by relatives of Burks for the purposes outlined above, but alleged that neither of these employments was ever consummated. They denied that anyone whomsoever had ever at any time discussed with them the facts of either the Henry or Burks case.
 

 The first and second bills of exceptions were reserved to the trial judge’s ruling permitting the district attorney and his assistant to testify, over the objection of defendant’s counsel, in support of the facts stated in their answer to the motion, the objection being based on the ground that the evidence was irrelevant and immaterial under Article 310 of the Code of Criminal Procedure, the pertinent part' of which declares that “Any district attorney shall be recused by the judge in criminal cases: * * * if said district attorney shall have been employed or consulted as attorney for the accused before his election or appointment as district attorney
 
 *882
 
 * * Bill of Exceptions No. 3 was reserved to the overruling of the motion for recusation after the evidence was heard.
 

 The above paragraph of Article 310 of the Code of Criminal Procedure is an exact replica of subsection 3 of Section 2 of Act No. 35 of 1877, which act was passed to amend Section 1067 of the Revised Statutes of 1870, and although this law has remained on our statute books over this long period of years, this is the first time it has been before the Supreme Court for •consideration.
 

 In disposing of these bills of exceptions, the trial judge said:
 
 “It is
 
 our conception •of the law that the Act upon which the motion is based was included in the Code for the purpose of protecting an accused, and to prevent the prosecution of an accused by one who had previously been his attorney, or who had been consulted as his attorney, so that he might have obtained privileged information which he otherwise would not have had,” declaring further: “The evidence admitted in this case shows that the present District Attorney (or his assistant) was not employed as counsel for the defendant, was never consulted by the defendant or anyone else as her counsel, and had no information of any kind from the defendant or anyone else as to the facts of the case. The defendant could not be prejudiced by the present District Attorney (or his assistant) serving in that capacity in the prosecution of her case.” (Brackets ours.)
 

 Counsel for defendant did not in any manner question the findings of the district judge with respect to the facts, it being their contention that the mere fact that Hawkins and Tritico were approached with the view of employment in both the Henry and Burks cases, irrespective of whether the facts of either case were ever discussed with them constituted consultation “as attorney for the accused" within the meaning and contemplation of Article 310 of the Code of Criminal Procedure, relying on the cases of State ex rel. Stewart v. Reid, 114 La. 97, 38 So. 70; State v. Perkins, 124 La. 947, 50 So. 805; and State v. Tate, 185 La. 1006, 171 So. 108, to support this contention.
 

 Counsel for defendant are in error in the interpretation they have placed upon this codal article. A mere reading of the article will show that it means exactly what it says, i.e., that any district attorney (or assistant district attorney) who has, previous to his election or appointment,
 
 “been *
 
 * *
 
 consulted as attorney for the accused,”
 
 will be recused in the trial of the case. This clause does not say, nor can it be construed to mean, that the district attorney (or his assistant) will be recused because his employment was sought by someone on behalf of the accused prior to his election or appointment. . It means that he will be recused if prior to his election or appointment he was consulted professionally with respect to the rights or defenses of the accused. We can think of no reason, and none has been pointed out to us, why the meaning of this codal article should be extended further. The reason for this rule of law is that it prevents a district attorney (or his assistant) from taking advantage of an accused by being placed in the position of having available
 
 *884
 
 for use against the accused information forming a part of the privileged communications existing between an attorney and his client that was imparted to him prior to his election or appointment. The other states that have passed on this point are in accord with this view. People v. Gerold, 265 Ill. 448, 107 N.E. 165, Ann.Cas.1916A, 636; People v. Hanson, 290 Ill. 370, 125 N.E. 268; Steeley v. State, 17 Okl.Cr. 252, 187 P. 821; Garrett v. State, 94 Tex.Cr. 556; 252 S.W. 527; and 27 C.J.S. 398, District and Prosecuting Attorneys, § 12.
 

 The cases upon which counsel for defendant rely are not apposite. In fact they, in our opinion, demonstrate that the object of the rule, incorporated into our statutory law1 as Article 310 of the Code of Criminal Procedure is as herein expressed.
 

 The effect of the Perkins and Reid cases is that a district judge will not be allowed to sit in the trial of a cause where there is a possibility that his judgment will be affected by reason of his connection with the case prior-to his election to the bench, while the basis for the motion of recusation in the Tate case [185 La. 1006, 171 So. 111], upon which the court rested its decision, was that
 
 “the district attorney had a personal interest adverse to that of the prosecution,
 
 in that it was his legal duty to protect the innocent as well as to prosecute the guilty, which he could not do because he was associated as an attorney in a series of" civil suits against the defendant, the outcome of which depended upon his success in convicting the defendant.” (Italics ours.)
 

 In the Perkins case the district judge sitting at the trial of Perkins, who was charged on an information with embezzling a large sum of taxes collected by him by virtue of his office, was sought to be recused on the ground that prior to his election as judge he had been
 
 employed and consulted ■
 
 for the purpose of taking steps to recover the money which Perkins was alleged to have misappropriated and embezzled. This court declared that the legislature by its adoption of Act No. 40 of 1880 created a uniform rule for the recusation of district judges which applied in both civil and criminal cases, holding that the judge in question had been consulted “as [an] advocate in the cause” within the meaning and contemplation of the act for while he was employed and consulted on the civil remedy, nevertheless,
 
 “the basic matter was the same as in the criminal prose- ' cution.”
 
 Continuing, the court pointed out: “The recovery against the bank and other parties was predicated, not only on a shortage in the accounts of the tax collector, but also on his alleged wrongful diversion of the taxes to his own use. Such shortage and misuse constitute important elements of the crime with which defendant stands charged.” [124 La. 947, 50 So. 806.]
 

 The facts in the Reid case, other than that the proceedings were civil rather than criminal, are substantially the same as those in the Perkins case.
 

 We therefore conclude that the trial judge properly overruled Bills of Exceptions Nos. 1, 2, and 3.
 

 
 *886
 
 Bill of Exceptions No. 4 was reserved to the trial judge’s ruling during the course of the examination of J. A. Collins, a prospective juror, which counsel for defendant contend was an interference by the court with their freedom of examining prospective jurors to test their qualifications.
 

 The trial judge in his per curiam has clearly set out the issues presented by this bill and we find no error in his disposition thereof. This per curiam is as follows:
 

 “During the examination of this juror and the examination of all previous prospective jurors counsel for the defense propounded a long series of questions assuming that the juror was thoroughly familiar with the law relative to the verdicts that might be rendered in a case where the defendant was charged with murder, and also assuming that the prospective juror was familiar with the law as to proof of guilt beyond a reasonable doubt.
 

 “In view of the fact that this and many other prospective jurors did not know the law, the examination became extremely long and in many instances hopelessly involved.
 

 “In order to save time the Court requested counsel for the defendant to indicate when he expected to examine prospective jurors on the law as to the verdicts that might be returned and the law as to a proof of the guilt of an accused beyond a reasonable doubt, in order that the Court might instruct the prospective jurors as to the law on each point. This procedure was followed during the subsequent examination of prospective jurors until the panel was complete. After the prospective jurors were instructed as to the law on these two points defense counsel was then permitted to ask any question they desired, even including technical questions as to the law, as long as those questions were in proper form.
 

 “There was no limitation placed upon the examination of jurors, and the Court permitted counsel to go far beyond the ordinary scope of an examination of jurors in order that defense might have every opportunity to challenge a juror in the event there was any question as to his qualification. There was no objection made to the instruction given to the prospective jurors by the Court, and there was no objection made to the Court’s written charge to the jury, which of course included a charge
 
 on
 
 these identical points.
 

 “This procedure was followed solely to expedite the trial, and the defendant could not have been prejudiced in any way whatsoever.”
 

 The next two bills of exceptions were reserved to the trial judge’s refusal to sustain the defendant’s challenge for cause of prospective jurors R. F. Coffey and Charles R. Richardson.
 

 The trial judge disposed of these two bills in one per curiam, declaring that these two prospective jurors are intelligent, educated men who, having read the report in the newspapers of the previous trials of the defendant, had formed an opinion as to her guilt or innocence. He also points out that neither of these two jurors knew any of the facts of the case from any dis
 
 *888
 
 cussion they had with any of the witnesses in the case or from having heard any of the former trials. He stated further:
 

 “Counsel for the defense in their examination of prospective jurors on their 'voir dire confined their efforts almost entirely to the task of disqualifying jurors instead of ascertaining whether the jurors were qualified. * * *
 

 “Defendant counsel never propounded the question to ascertain whether a juror’s opinion would readily and easily yield to evidence, but confined themselves to the question of whether a prospective juror had an opinion, and whether it would require evidence to remove it. Whenever there was the slightest doubt in the Court’s mind as to the qualifications of a juror, the Court sustained challenges for cause, as demonstrated by the fact that practically 250 jurors were examined in order to obtain a panel of 12. The impropriety of this examination in the case of Coffey and Richardson is clearly demonstrated in the answers of these two prospective jurors. They had opinions, but they were in position to put these opinions aside and try the case solely on the evidence adduced on the trial.
 

 * * * ’ * * *
 

 “Each of these prospective
 
 jurors
 
 told the Court that their opinion would not only easily and readily yield to evidence in the case, but they could go even further than this, and try the case as though they had never heard of it.
 

 ******
 

 “Defendant was not prejudiced in this case by the Court’s ruling as to these two jurors. The juror that was finally accepted by the defense after they had exhausted all of their peremptory challenges had never-heard of the case, he had no opinion in the case, and was qualified in every respect.”
 

 From our review of the evidence we think the judge’s ruling with respect to-these two bills was correct.
 

 It is specifically declared in the-Code of Criminal Procedure that a partial juror may be challenged for cause “but an opinion as' to guilt or innocence of the-accused, which is not fixed, or has not been-deliberately formed, or that would yield to-evidence, or that could be changed, does not disqualify the juror.” Article 351. It is only where a prospective juror’s opinion as to the guilt or innocence of the accused' is so fixed that it would influence his verdict that he may be considered disqualified because of such opinion and challenged for cause. State v. Brette, 6 La.Ann. 652; State v. Carriere, 141 La. 136, 74 So. 792; State v. Scruggs, 165 La. 842, 116 So. 206; State v. Carter, 167 La. 1080, 120 So. 864; State v. Flores, 169 La. 22, 124 So. 132. Even though he has formed an opinion as to the guilt or innocence of the accused from discussions participated in or from reading about the same in the newspapers,, the prospective juror is competent if, having no prejudice against the accused, he-can lay aside that opinion. Particularly is this so where he states under oath that he is able to and will try the case only on the evidence adduced during the course thereof. State v. Roberson, 159 La. 562, 105 So. 621. Furthermore, a prospective juror’s.
 
 *890
 
 competence or incompetence cannot be limited to isolated answers given during the course of his examination. It must be judged from his entire examination. State v. Ford, 42 La.Ann. 255, 7 So. 696; State v. Rodriguez, 115 La. 1004, 40 So. 438; State v. Owen, 126 La. 646, 52 So. 860; State v. Briggs, 142 La. 785, 77 So. 599.
 

 As pointed out by the trial judge, both Coffey and Richardson are highly educated men. Such opinions as they entertained as to the guilt or innocence of the defendant were based on information they received by reading the newspaper accounts of her previous trials. Both of these men declared that such opinions as they had would readily yield to the evidence adduced during the trial. Coffey, when examined by the trial judge, «stated the opinion he had formed about the case was not a fixed one, declaring further that he was in a position to go into the jury box and try the case as though he had never heard of it. Richardson likewise declared he had formed an opinion as to the guilt or innocence of Mrs. Henry from his reading of the newspapers, but he added that he would be bound by the oath he-took to try the case upon the evidence adduced on the trial only.
 

 Moreover, the judge’s opinion that the defendant was not prejudiced by his ruling in this instance is, in our opinion correct, for neither of these jurors served, having been peremptorily challenged by the defendant, it not appearing that as a result thereof the defendant was forced to accept an obnoxious juror. Article.353 of the Code of Criminal Procedure.; State v. Crawford, 195 La. 428, 196 So. 921; State v. Henry, 197 La. 999, 3 So.2d 104; and State v. Breedlove, 199 La. 965, 7 So. 2d 221.
 

 Counsels’ contention in effect is that because of the ruling of the trial judge which prompted their reservation of Bill of Exceptions No. 7, they were not allowed to impeach the state’s witness Burks by showing that he had made prior statements at variance with his testimony in the case.
 

 The trial judge’s appreciation of the facts giving rise to this bill is supported by the record and his disposition of the matter, in our opinion, clearly demonstrates the bill is without merit. The judge’s per curiam to this bill is as follows:
 

 “At the time this bill was reserved defense counsel was attempting to show that Finnon Burks, who is already under sentence of death, must have been promised something by the officials in order to influence him to testify against his co-defendant.
 

 “In an attempt to prove that promises had been made Burks, counsel sought to prove some conversation between Burks and Mr. Hawkins over a year before Hawkins became the District Attorney, by showing that Burks had made some statement concerning the conversation to Moss, one of the defense attorneys. The Court excluded the evidence for the reason that it was shown that Hawkins only talked to Burks concerning Hawkins representing Burks before the Pardon Board. This con-' versation was had at a time when Hawkins was not an official, and in the opinion of
 
 *892
 
 the Court was absolutely immaterial and irrelevant. During this examination counsel for the defendant, changing his position, assumed the position that if they could show that this witness made inconsistent statements the evidence was relevant. The Court ruled that inconsistent statements were relevant, in the following words: 'He is under cross examination, you can test his veracity in that regard.’ The witness answered the question by denying that he h'ad made inconsistent statements, and he further answered the question by testifying as to his conversation with Moss. The defense at no time sought to contradict this testimony, and insofar as the proposition presented by the bill as to proof of inconsistent statements is concerned there is nothing whatever before the Court.
 

 “The Court permitted counsel to examine the witness as to any offers that had been made him by the District Attorney in his official capacity, but they did not pursue the point, and failed to show that improper conduct on the part of any official had influenced Burks to testify.
 

 “As we have stated above, prior inconsistent statements were never excluded by the Court, and the only prior statements that were shown to have been made were never contradicted by the defendant. For this reason the defendant could not have been prejudiced by the ruling which is the foundation of this bill.”
 

 A review of the very short excerpt of evidence submitted with this bill discloses that Burks denied having made any inconsistent statements to Mr. Moss (defendant’s counsel) in the presence of a Mr. Duhon. It necessarily follows that if counsels’ purpose in thus questioning Burks was to attack his credibility as a witness or to impeach his testimony, which they had every right to do, the foundation was laid for the carrying out of such purpose. However, counsel made no effort whatever to avail themselves of the same by thereafter introducing either the testimony of Mr. Moss or Mr. Duhon in this respect.
 

 The last bill of exceptions was reserved to the ruling of'the trial judge overruling defendant’s motion for a new trial, in which motion was incorporated, in addition to the seven bills of exceptions just disposed of, an alleged improper emphasis placed upon a remark by the district attorney during the course of his closing argument before the jury to the effect that the defendant’s two previous convictions had been reversed by the Supreme Court on technicalities.
 

 This court will not review any alleged improper argument by the prosecution unless timely objected to and the necessary reservation of a bill of exceptions thereto. State v. Shoemake, 143 La. 65, 78 So. 240; State v. Dalcour, 145 La. 1008, 83 So. 223; and State v. Menard, 169 La. 1197, 126 So. 921.
 

 Moreover, it appears from the per curiam of the trial judge that there was nothing objectionable in the attitude, conduct, or diction of the district attorney. He stated that the argument complained of was provoked by the argument of defendant’s counsel which was calculated to convey to the jury the idea that this
 
 *894
 
 court had remanded her case on two previous occasions because the evidence did not warrant a verdict of guilty, thus justifying a finding by the jury that the defendant was guilty without capital punishment or that she was not guilty.
 

 For the reasons assigned, the conviction and sentence are affirmed.