93 So.2d 691

STATE of Louisiana

v.

Joseph SHEFFIELD.

No. 43126.

Jan. 21, 1957.

Rehearing Denied Feb. 25, 1957.

Warren Hunt, Rayville, Joseph S. Guerriero, Monroe, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Harry N. Anders, Dist. Atty., Winnsboro, for appellee.

SIMON, Justice.

Joseph Sheffield has appealed to this Court from his conviction and sentence to death for the crime of murder and relies upon eleven bills of exception for the reversal thereof.

The accused was indicted on June 17, 1953, by the grand jury for Franklin Parish for the murder of John L. Waller on June 14, 1953, and was duly arraigned. His offer to plead guilty to the said charge was refused by the trial court, and counsel was appointed to represent and assist him in his defense, and his trial therefor was regularly set for June 29, 1953, in the Fifth Judicial District Court. The jury returned a verdict of "Guilty as charged" against the said accused; and, on July 3, 1953, he was sentenced to death. No appeal was perfected from said verdict and sentence.

On November 3, 1954, counsel, other than those initially appointed, in behalf of the defendant instituted a habeas corpus proceeding in the Federal Court for the Western District of Louisiana at Monroe, Louisiana. United States ex rel. Sheffield v. Waller, 126 F.Supp. 537. In response to this application a writ of habeas corpus was

issued, ordering the Fifth Judicial District Court and the sheriff of Franklin Parish to grant the defendant a new trial within six months from the finality of said judgment or to release him.

The State of Louisiana, after exhausting all remedies before Federal appellate tribunals, filed an application on January 12, 1956, for an extension of time within which to try the defendant. The Federal District Court in Monroe thereupon issued an order amending its original judgment granting to the State of Louisiana an extension of 90 days, commencing January 18, 1956, for the retrying of the defendant, "said extension to continue so long thereafter as is necessary to complete the prosecution, provided said prosecution is carried forthwith with due diligence".

On March 19, 1956, the defendant was again tried for the crime charged, found guilty thereof and sentenced to death.

The bills of exception reserved at the second trial of the defendant are now before us for review.

■■■ Bill of Exception No. 1 was reserved to the overruling by the court of the motion by the accused for a change of venue.

Defendant contends that, by reason of prejudice existing in the public mind against him growing out of publication of articles and news items by the press concerning the trial and this charge, the citizens of Franklin Parish, wherein the crime was committed, had become so inflamed and prejudiced against him that it would be impossible to obtain an unbiased jury before whom a fair and impartial trial could be had as is guaranteed by the State and Federal constitutions.

A lengthy trial of and an exhaustive inquiry into this motion for change of venue was had. The defendant produced 18 witnesses and various newspaper articles in support of his contention. The State produced 31 witnesses. The evidence attached to this bill includes photostatic copies of newspapers available to the inhabitants of Franklin Parish which carried informative news accounts of this case. Our examination of the photostatic copies of the newspapers offered in evidence convinces us of the correctness of the trial judge's conclusion. And, as stated in the judge's per curiam, the newspaper coverage was not appreciably different from that ordinarily given by newspapers to comparable crimes, more particularly as is commonplace in the rural parishes of this state.

We can not conceive of the peaceful and law-abiding people of this state reading accounts of the crime of murder within their immediate vicinity without experiencing some measure of resentment against such violence. But we look in vain for evidence of bias, or prejudice, or inflamed passion such as would violate or prejudice the con-

stitutional and inviolate rights of the accused.

There is ample evidence in the record to show that the accused could obtain a fair and impartial trial in Franklin Parish. At no time from the date of the commission of the crime charged and at no time during the course of his trial had there been any evidence of antagonism, bitterness, rancor, or any feeling of hostility shown or demonstrated against the person of the defendant. Significant is the fact that almost two and one-half years had elapsed between the date of the crime charged and that of this trial.

Notwithstanding the positive testimony of the witnesses and the per curiam of the trial judge that the defendant could receive a fair trial in this court, counsel for defendant contended the contrary, based on his personal opinion and on his personal "feeling" of alleged resentment against Judge Ben C. Dawkins, Jr., for having given the defendant herein a new trial. Personal opinions and feelings of counsel can not be employed as a substitute for basic law and fact.

A close scrutiny of the record convinces us that the trial judge did not abuse his discretion in denying a change of venue. An application for a change of venue is addressed to the sound discretion of the trial court. State v. Roberson, 159 La. 562, 105 So. 621; State v. Collier, 161 La. 856, 109

So. 516; State v. Washington, 207 La. 849, 22 So.2d 193; State v. Leming, 217 La. 257, 46 So.2d 262; State v. Johnson, 226 La. 30, 74 So.2d 402; State v. Swails, 226 La. 441, 76 So.2d 523.

We find no merit in Bill of Exception No. 1.

Bills of Exception Nos. 2, 3 and 4 were reserved to the ruling of the trial judge refusing to sustain challenges for cause of prospective jurors made by the defendant to their respective qualifications.

Bill of Exception No. 2 challenged the qualification of prospective juror Roy A. Stewart, who stated on his voir dire examination that he had formed an opinion as to the guilt or innocence of the defendant, but that said opinion was not fixed, had not been deliberately formed and could be changed by evidence; that he could disregard his opinion and try the case strictly on the evidence as he heard it from the witnesses and apply the law as charged by the court to said evidence; that he had no bias or prejudice either for or against the accused; that he could render a fair and impartial verdict both as to the State and the accused.

Bill of Exception No. 3 challenged the qualification of prospective juror Walter Huff who, in his voir dire examination, testified that he had known the defendant and the deceased for about ten or twelve years, but that this acquaintanceship would

not influence him on the trial of the case; that he had formed some opinion as to the guilt or innocence of the defendant from what he had read and heard about the case, but that such opinion was not of a fixed nature and would yield to the evidence; that he was a personal friend of Sheriff Hiram Waller, a brother of the deceased, but that he could completely disregard his friendship with Sheriff Waller and decide the case strictly on the evidence as he heard it from the witnesses.

 The well-settled law and jurisprudence of this state relative to the above challenges has been stated by us in the case of State v. Henry, 200 La. 875, 9 So.2d 215, 219:

"It is specifically declared in the Code of Criminal Procedure that a partial juror may be challenged for cause 'but an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror.' Article 351. It is only where a prospective juror's opinion as to the guilt or innocence of the accused is so fixed that it would influence his verdict that he may be considered disqualified because of such opinion and challenged for cause. State v. Brette, 6 La.Ann. 652; State Carriere, 141 La. 136, 74 So. 792;

State v. Scruggs, 165 La. 842, 116 So. 206; State v. Carter, 167 La. 1080, 120 So. 864; State v. Flores, 169 La. 22, 124 So. 132. Even though he has formed an opinion as to the guilt or innocence of the accused from discussions participated in or from reading about the same in the newspapers, the prospective juror is competent if, having no prejudice against the accused, he can lay aside that opinion. Particularly is this so where he states under oath that he is able to and will try the case only on the evidence adduced during the course thereof. State v. Roberson, 159 La. 562, 105 So. 621. Furthermore, a prospective juror's competence or incompetence cannot be limited to isolated answers given during the course of his examination. It must be judged from his entire examination. State v. Ford, 42 La.Ann. 255, 7 So. 696; State v. Rodriguez, 115 La. 1004, 40 So. 438; State v. Owen, 126 La. 646, 52 So. 860; State v. Briggs, 142 La. 785, 77 So. 599." See, also, State v. Brazile, 229 La. 600, 86 So.2d 208.

In the case of State v. Atwood, 210 La. 537, 27 So.2d 324, 326 we held:

"The law is perfectly clear, as set forth in Article 351 of the Code of Criminal Procedure, that the relations, whether by friendship or enmity, between a prospective juror and the person injured are such that it must be

reasonably believed that they would influence the juror in coming to a verdict, before a prospective juror is disqualified because of such acquaintance. * * *" See, also, State v. Wideman, 218 La. 860, 51 So.2d 96.

■ We find no merit in Bills of Exception Nos. 2 and 3.

■ Bill of Exception No. 4 challenges the qualification of prospective juror Jesse J. Hatton, who, on his voir dire examination, testified that he had formed an opinion as to the guilt or innocence of the accused from what he had heard and read about the case, but that such opinion was not of a fixed nature and would yield to the evidence adduced at trial. Hatton was further challenged because, before it was known that he would be as prospective juror, he was summoned by the State and testified on the trial of the motion for a change of venue. We find nothing involved in the examination of this prospective juror on the trial of the motion for change of venue that would disqualify him as a juror; neither has the defendant pointed to anything of that nature.

Article 351 of the Code of Criminal Procedure, LSA–R.S. 15:351, sets forth the special causes for which a juror may be challenged, and the cause urged in this bill is not found therein. For this reason, as well as for the reasons set forth in Bills

of Exception Nos. 2 and 3, we find no merit in Bill of Exception No. 4.

■ Bill of Exception No. 5 was reserved to the overruling of a plea to the jurisdiction of the Fifth Judicial District Court. This plea is based on the contention that the United States District Court for the Western District of Louisiana was without authority to amend its original judgment signed on January 10, 1955, ordering the sheriff and other officials of Franklin Parish to try the defendant within six months from the finality of said judgment or to release him and by said amendment extend the time during which the accused could be tried. Defendant contends that the six-month period during which the Franklin Parish court had a right to try the defendant expired on January 10, 1956; that the application for an extension of time filed by the State on January 12, 1956 was filed too late and that thereby the Franklin Parish court lost the right to try the defendant and was bound to release him.

The State contends that the said judgment was not final until such time as it had exhausted its recourse to the appellate Federal courts, and that the finality of the said judgment or the writ of habeas corpus became final on December 12, 1955, the date on which the Supreme Court of the United States denied the State of Louisiana leave to file a petition for writ of certiorari in

that Court; United States ex rel. Sheffield v. Waller, 350 U.S. 922, 76 S.Ct. 217, 100 L.Ed. 807 that notwithstanding this fact, the State, in an abundance of caution applied to the Federal court for an extension of time in which to try the said defendant, which time was extended for 90 days, commencing January 18, 1956.

To support the contention that Judge Ben C. Dawkins, Jr., had no authority to grant said extension of time, defendant cites the provision of 28 U.S.C.A. § 2243, which section of the United States Code specifically refers to the issuance of the writ of habeas corpus and provides:

"The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

We find no law, and the defendant has failed to cite any law or jurisprudence to sustain his position that this Codal Article of the United States Code prohibits the order granting the extension of time herein complained of. It is our opinion that by virtue of the power granted by said Article, the United States District Court for the Western District of Louisiana had a right to dispose of the matter presented in the habeas corpus proceeding by fixing a time limit within which the accused must be retried or discharged, and, further, to amend said order extending said time limit, as within his discretion law and justice require. In compliance with said order, the

defendant herein was brought to trial on March 19, 1956, within the time limit, as extended.

We find no merit to Bill of Exception No. 5.

Bill of Exception No. 6 was reserved to the overruling by the trial judge of the objection made by defendant to a question propounded by the district attorney on the redirect examination of a witness, Mrs. Addie Hudson. The question was:

"Q. If Homer Hodge testified that he did not grab the gun in Sheffield's hands until after the shot was fired, did you see anything different, or know anything different to that?"

The objection to the question was as follows:

"Your Honor, the form of questioning is illegal and incorrect in presuming that anything has been testified to before in this court by any witness, and asking the witness along those lines."

It is noted that at the time of this objection the jury had heard all of the testimony given by Hodge, as well as all of the testimony given by this witness, Mrs. Hudson, on direct and cross-examinations. Following the question objected to, the ruling of the trial court thereon, and the reservation of this bill, Mrs. Hudson answered, "I just know what I saw."

Counsel for defendant admits in his brief that this error standing alone would be in-

sufficient to warrant the granting of a new trial, but that this bill, together with all other bills, tends to show that defendant was prejudiced.

We are unable to perceive in what manner the question and answer elicited thereby were prejudicial to the accused's rights, and counsel has not specified adequate ground for said objection.

■ It is well settled that a bill of exception must state the grounds of objection or point out specifically the errors complained of in order that an opportunity may be given the trial judge to correct them, and that, if it is not sufficiently specific, it will not avail the party raising it. State v. Green, 36 La. Ann. 185; State v. Carroll, 160 La. 199, 106 So. 782; State v. Keife, 165 La. 47, 115 So. 363; State v. Antoine, 189 La. 619, 180 So. 465; and State v. Labat, 226 La. 201, 75 So.2d 333.

■ It is also well settled that considerable latitude must be left to the trial judge in ruling on the form of questions to witnesses; that a conviction will not be reversed because the trial court allowed leading questions except where a showing is made that there was a clear abuse of such discretion calculated to have prejudiced the accused's rights, and that, while counsel should not be permitted to lead a witness, a verdict will not be disturbed on that ground when the subject

was relevant unless there was a clear abuse of discretion. State v. Allemand, 153 La. 741, 96 So. 552; State v. Hollingsworth, 160 La. 26, 106 So. 662; State v. Fuller, 164 La. 718, 114 So. 606; State v. James, 165 La. 822, 116 So. 199; State v. Labat, supra.

■ We find no merit in Bill of Exception No. 6.

■ Bills of Exception Nos. 7 and 8 were reserved to the trial court's ruling relative the admissibility in evidence of two written confessions of the defendant taken at two different times. The objections are based on the contention that the confessions were not free and voluntary in that the officer taking the confessions talked at some length to the accused, both before and after the confessions; that they were not complete; and that the accused was not informed of his rights to counsel prior to his giving his confession.

The testimony of the witnesses attached to these bills reveals to our complete satisfaction that as a matter of fact said confessions were made freely and voluntarily and were not made under the influence of fear, duress, intimidation, menaces, threats, inducement, or promises.

We find no merit in objection to the admissibility of the confession on the ground that the district attorney, the officer receiving the confession of the ac-

cused, talked to him before and after said confession in view of the conversation had between them which is revealed by the record to be that the district attorney asked the accused questions relative to the location of the house at the site of the homicide, the number and location of the rooms thereof; that after receiving the first statement made by the accused and when the parties who were in the room at the time the statement was made were preparing to depart or were in the act of departing therefrom, the district attorney, in substance, asked the accused, "Joe, why in the world did you do this?" To which the accused answered, in substance, "I don't know." These questions and answers thereto were not incorporated in and made a part of the written confession. Nevertheless, the entire written confession went to the jury. Further, the State disclosed every fact and circumstance surrounding the making of this confession, as well as the conversations had between the district attorney and the accused, before taking of the written statement and after the conclusion of the written statement.

▆▆▆ In the absence of proof to the contrary, the fact that a written confession does not incorporate all of the conversation had between the district attorney and the accused does not violate the rights of the accused preserved by LSA-R.S. 15:450, which reads as follows:

"Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."

▆▆▆ The substance of what defendant stated was incorporated in the written confession and proven beyond doubt by the evidence in this case. Written confessions to be admissible in evidence against the accused need not be in any particular form nor in exact language of the accused but are sufficient if the substance of the accused's statement is taken down. State v. Brasseaux, 163 La. 686, 112 So. 650.

The objection to the admissibility of the confession on the ground that the statement itself does not show that all of the rights of the accused party were made known to him at the commencement of the taking of the statement, or that the accused was informed that at the time of giving the statement he was entitled to have a lawyer of his own choosing present, or that the court would be required to appoint a lawyer to assist him in the defense of his case is without merit.

▆▆▆ An examination of the written confession shows that the accused

party was fully informed of all of his rights. Further, the evidence taken on the hearing to determine whether or not the confession was admissible abundantly shows that the accused was informed by the district attorney that his' statement would be used against him, both at the grand jury investigation of the matter and in court at the trial of the case if he was indicted, notwithstanding that the accused is not entitled to be informed that a voluntary confession might or will be used against him. State v. McGuire, 146 La. 49, 83 So. 374; State v. Burks, 196 La. 374, 199 So. 220; State v. Byrd, 214 La. 713, 38 So.2d 395; State v. Alleman, 218 La. 821, 51 So.2d 83.

We find no merit in Bills of Exception Nos. 7 and 8.

Bills of Exception Nos. 9 and 10 were reserved as a result of the rulings of the trial court on objections which grew out of the testimony of the defendant on his own behalf.

■ The defendant voluntarily testified as a witness in his own behalf and testified that the killing of the deceased was an accident. Upon cross-examination he was asked whether, in a conversation had between him and Sheriff Waller, brother of the deceased, he had made certain statements to the sheriff relative to the homicide. Counsel for defendant contends that said statements would relate to ad-missions or confessions against the interest of the accused and therefore were objectionable on the ground that they had not been covered by the district attorney in his opening statement. The trial court overruled the objection, and Bill of Exception No. 9 was reserved.

After the accused left the witness stand the State called Sheriff Waller to rebut the testimony given by the accused and to impeach his testimony. The defendant objected to the admission of the testimony of the sheriff on the ground that *it consisted of evidence of an oral confession allegedly made by the defendant which was not referred to in the opening statement by the district attorney,* for which no proper foundation was laid, and which was not legally in rebuttal of any other testimony. The trial court overruled the objection, to which ruling Bill of Exception No. 10 was reserved.

As heretofore stated, the accused voluntarily submitted himself as a witness in his own behalf and testified on direct examination that the shooting and the killing of the deceased was the result of an accident. The State had already established its case in chief. The district attorney in his opening statement had fully informed the jury of his intention of offering confessions made by the accused and in his presentation of the case in chief did offer said testimony. On cross-examination, the district attorney asked him questions relative to his conver-

sation with the sheriff at the time of his arrest, for the obvious purpose of testing his credibility as a witness, of weakening or destroying his testimony on direct examination that the shooting was accidental. There is no doubt that such cross-examination for this purpose is proper. LSA–Revised Statutes 15:486 and 15:490; Marr's Criminal Jurisprudence, section 627.

The jurisprudence is clear that such cross-examination of the accused was proper for the double purpose of impeaching his testimony that he accidentally shot and killed the deceased if he answered the question in the affirmative, or of laying a foundation for impeaching him and showing him to have testified falsely if he answered the questions in the negative. State v. Pousson, 134 La. 279, 63 So. 902; State v. Stroud, 198 La. 841, 5 So.2d 125; State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Rocco, 222 La. 177, 62 So.2d 265.

In the case of State v. Stroud, supra, the defendant was asked on cross-examination if he had made a certain statement in the city jail on the date of the shooting in the presence of Night Marshal Baker, to which question he answered in the negative, after defense counsel objections had been overruled. After the defendant closed his case the State in rebuttal called Night Marshal Baker and asked him if the accused had made the statement. In passing upon the issue, this Court said [198 La. 841, 5 So.2d 127]:

"In Marr's Criminal Jurisprudence, Volume 1, page 151, it is stated that the offense of shooting with intent to murder is composed of two ingredients; one, the shooting, and, second, the intent to commit murder. It is also stated that the gravamen of the crime lies in the intention with which the act of shooting is done. State v. Price, 45 La.Ann. 1430, 14 So. 250; State v. Brinkley, 180 La. 679, 157 So. 388.

"The statement made by the accused was relevant and material to show intention and animus on his part, especially in rebuttal of his plea that he shot in self-defense, that he only shot to stop Tarver, and that he was sorry he had to shoot him. The statement that the defendant wanted to get two or three 'more' of them at the mill was competent and material to show his intent 'to get Tarver.' Code of Criminal Procedure, Articles 444, 445, and 446.

"This is not a case where the prosecution reserved its main attack until after the defendant had closed his case. It is not an instance where important testimony was withheld by the prosecution until after the defendant's case was closed so as to place him at a disadvantage. The State had already established, by eyewitnesses, its case in chief and had shown that Tarver was unarmed and had given no provo-

cation at the time he was shot by the accused. The statement was introduced in evidence to rebut the defendant's testimony tending to show that he shot in self-defense and that he had no intention of returning to the mill to attack Tarver. State v. Pousson, 134 La. 279, 63 So. 902. Moreover, the trial judge has discretion in matters of this kind and it does not appear that he abused his discretion in this case (Article 379, Code of Criminal Procedure), because the defendant had been placed on his guard concerning the statement when he was on the stand and he closed the case without making any attempt to corroborate his denial of having made the statement by placing either his brother-in-law or his wife on the stand."

For the reasons above stated, we find no merit in Bills of Exception Nos. 9 and 10.

Bill of Exception No. 11 was reserved by the defendant to the overruling of his motion for a new trial. The motion was based on the ground that Sheriff Waller, who upon motion by the defendant had been recused from serving in his official capacity during the trial of the case and was sequested from the courtroom during the said trial, returned to the courtroom after the trial was concluded to listen to the arguments of counsel to the jury and remained during the greater part thereof. Defendant contends that the presence of said sheriff in the courtroom had some effect upon the jury that was prejudicial to the accused.

In his per curiam, the trial judge informs us that during the entire trial, until the last witness had been examined, Sheriff Hiram Waller was under sequestration, as were all other witnesses, except those excused from the rule by express consent of both counsel. When both the State and the defense had closed, the witnesses were excused from the rule, without objection; and court recessed until late in the evening so that the jury, court officers and others could go for their evening meal. When court reconvened for the final arguments, the court's charge and the final submission of the case to the jury, of course the witnesses were not under sequestration. No objection was made to the presence of Sheriff Waller in the court. Therefore, the court was powerless to take any action with regard thereto, if any action was required.

We find no showing that any of defendant's rights were jeopardized, or that he was in any manner prejudiced by the presence of Sheriff Waller in the courtroom at that particular phase of the case.

Another ground urged in the motion for a new trial was that the testimony of four witnesses taken during the trial of the motion for a change of venue was

lost when the plastic plates on which their testimonies were recorded by a sound-scriber allegedly deteriorated, and that said loss of testimony renders the record incomplete. Defendant does not specify in what way said loss of testimony prejudices his rights, whereas, the trial judge in his per curiam states as follows:

"* * * The testimony of defendant's witnesses, N. G. Lee, John T. O'Brien, Roy McIntyre and Robert Garner, is missing from the record, because of a failure of the mechanical recording device to properly record same or because it was accidentally or inadvertently obliterated from the machine's records. However, I took detailed notes on the testimony of these four gentlemen, as well as of the testimony of all other witnesses and their testimony was quite similar in import to that of the other of defendant's witnesses. Each of these four gentlemen testified that in his opinion the defendant could obtain a fair and impartial trial in Franklin Parish."

We find no error in the ruling of the trial court to Bill of Exception No. 11.

Defendant filed a motion in arrest of judgment on the ground that the record allegedly contains manifest error and for the reason that the record is incomplete. Defendant fails to point to any errors patent on the face of the record. Assuming, for the sake of argument, that the record is incomplete as urged, this complaint is contained in Bill of Exception No. 11, which we have already disposed of and are thus relieved of the necessity of reconsidering same.

Accordingly, for the reasons assigned, the verdict and sentence are affirmed.

### On Rehearing

PER CURIAM.

To avoid any seeming conflict in our rulings on bills of exception 9 and 10 with the conclusions reached by us in the cases of State v. Hayes, 162 La. 310, 110 So. 486, and State v. Ward, 187 La. 585, 175 So. 69, we do not in any manner, expressly or by implication, overrule the holdings or the conclusions reached in the said two cited cases.

In the instant case the record clearly discloses that alleged incriminating statements of the defendant, the admissibility of which was objected to, were fully covered in the opening statement to the jury by the District Attorney.

The record further discloses that the said incriminating statements alleged to have been made as not being freely and voluntarily given and not having the proper foundation laid therefor, were clearly admissible

being part of and included within the written and oral confessions of the defendant, which had been previously admitted by the court after the proper foundation therefor had been laid during the presentation of the State's case in chief in accordance with law.