---

(78 South. 978)

No. 23051.

STATE v. GILLIARD.

(May 27, 1918.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ⚖⇒1151—CONTINUANCE—DISCRETION OF TRIAL COURT — INTERFERENCE.

Because trial judges have incomparably better opportunities than the Supreme Court to know when a continuance or postponement should be allowed, the Supreme Court is reluctant to interfere with their discretion in the matter.

2. CRIMINAL LAW ⚖⇒590(2)—CONTINUANCE—DISCRETION OF TRIAL COURT.

Where defendant, charged with homicide, delayed unnecessarily to employ counsel, but, when he did so, the latter investigated the circumstances and summoned a large number of witnesses, and defendant's charge of a conspiracy to implicate him through leaving a pair of his gloves at the scene of the homicide, made in support of his motion for continuance to permit of an investigation, was uncorroborated, and re-

liable evidence indicated that the gloves were left by defendant himself at the place where they were found, the trial court did not abuse his discretion in denying motion for continuance.

O'Niell, J., dissenting.

Appeal from Twelfth Judicial District Court, Parish of De Soto; John H. Boone, Judge.

Murray Gilliard was convicted of manslaughter, and he appeals. Affirmed.

C. E. Hardin, of Leesville, and S. M. Atkinson, of Mansfield, for appellant. A. V. Coco, Atty. Gen., and W. M. Lyles, Dist. Atty., of Leesville (Vernon A. Coco, of New Orleans, of counsel), for the State.

PROVOSTY, J. On an indictment for a murder alleged to have been committed on the 7th of the month, the accused was arraigned on the 15th, and the trial fixed for the 20th. He was then tried, and found guilty of manslaughter, and he has appealed.

He complains of the denial of the following motion for a continuance:

"Comes now Murray Gilliard, the defendant in the above-styled cause, and moves for a postponement of the trial of this case for the reasons as hereinafter set forth, to wit:

"(1) That he was indicted on the charge of murder on the 14th day of February, A. D. 1918, and on the same day he was arraigned on said charge, pleaded not guilty, and his trial was fixed for to-day, the 20th instant.

"(2) That prior to his indictment he had retained as his counsel, S. M. Atkinson, Esq., and had paid him a small retainer fee, but it was understood in said retainer agreement that the said counsel so retained was not expected to make any preparation for a trial, but was only to look after the preliminary arrangements in the event the defendant was indicted, and that the said S. M. Atkinson, Esq., made no investigation until after the arraignment and his fee had been fixed and secured.

"(3) That at the time of his arraignment he employed as his counsel C. F. Hardin, Esq., on whom he depended to carry the principal burden of the trial and to act as his leading attorney in this case.

"(4) That the said Hardin came to Mansfield on Sunday, the 17th instant, and made a visit to the scene of the alleged homicide with the view of ascertaining such facts as he was able to ascertain within a limited space of two or three hours that he had to investigate the case.

"(5) That the said Hardin had depended upon the said Atkinson making a full and complete investigation prior to the time he arrived at Mansfield, and the said Atkinson had made some investigation, but on account of having pressing matters on hand, and on account of his indisposition, the said Atkinson was unable to make such an investigation as the case warranted between the date of the arraignment and the 17th instant.

"(6) That the said Hardin was engaged in the case of State of Louisiana v. S. C. McGarrity, pending in the district court for the parish of Bienville, and was forced to leave Mansfield on the afternoon of the 17th in order to be present in court at Arcadia on the 18th, and the said Hardin immediately returned from Arcadia on the evening of the 18th instant, and was busily engaged after that time in preparing the case of State of Louisiana v. E. L. Harper, which had been previously fixed for the 18th instant, but was carried over until the 19th.

"(7) That the case of State of Louisiana v. E. L. Harper was called on the 19th instant, but was continued, and said Hardin and the said Atkinson immediately made preparations to go and did go to Grand Cane, the scene of the alleged homicide, to make further investigation of the case.

"(8) Now your defendant would show that this charge against him is based entirely upon circumstantial evidence, and defendant's counsel have been unable to acquaint themselves with all of the circumstances which are alleged to be against your defendant and prepare to meet the same in the short time they have had to prepare this case.

"(9) That defendant is informed that the state expects to show that a pair of gloves, alleged to have belonged to your defendant, were found at or near the scene of the alleged homicide, and on this circumstance your defendant understands that the state is depending largely for a conviction.

"(10) That your defendant was not at the scene of the homicide at the time of said homicide, and did not commit the same; that he and his counsel have done all they could possibly do to ascertain facts which will clear up the circumstance depended upon by the state for a conviction, and that they had materially accomplished their purposes, save as to the alleged discovery of the gloves alleged to belong to defendant at or near the scene of the homicide, and allegation of which your defendant's counsel was informed the state intended to make only about 3 o'clock on the afternoon of the 19th instant; that immediately upon discovering the fact that the state intended to offer evidence to show that defendant's gloves were found at or near the scene of the alleged homicide, your defendant's counsel endeavored to ascertain why such charge was made, and was informed the state claimed that

as a matter of fact the said gloves were at said place and his said counsel immediately returned to Mansfield, interviewing him as to said gloves, and the fact that the state claimed that they were found at said place and your defendant then and there told his said counsel that he had not put said gloves at said place intentionally or unintentionally, was not there, but the first he knew of the charge concerning the gloves was when a deputy sheriff had just a few moments before his interview with his counsel showed a pair of gloves to defendant and asked him if such gloves were his own, which he admitted they were.

"(11) That your defendant is the victim of a conspiracy if his gloves were found at the scene of the homicide, and he immediately advised his counsel that there was a conspiracy put in motion by parties living in the neighborhood of said homicide who were seeking his conviction and gave his said counsel, the facts in his possession justifying such charge of conspiracy.

"(12) That due to the lateness of the hour of said interview which was about 5 o'clock the afternoon of the 19th, his said counsel was unable to investigate the conspiracy of which he was subject before the trial of this case, and that he believes, and on such belief here alleges, that if given a few days, say not more than three or four days, his counsel, with the assistance of his friends, will be able to demonstrate clearly the conspiracy against your defendant and the placing of the gloves at the scene of the homicide by parties other than himself for the purpose of fixing guilt upon your defendant.

"(13) That the parties who your defendant believes placed these gloves at the scene of the homicide to throw suspicion on him had access to said gloves and were highly prejudiced and hostile toward your defendant, but this cannot be proven, unless your defendant's counsel have an opportunity to make a thorough and searching investigation of all of the circumstances surrounding the said gloves and their alleged finding at or near the scene of the homicide, which investigation your defendant's counsel and friends would have done had they learned of said fact in time, but which could not have been done after they learned of the alleged finding of said gloves.

"(14) That the matter of the gloves hereinabove discussed is, as your defendant is informed, the main allegation relied upon by the state, which, if rebutted by proper, legal, sufficient, and admissible evidence that defendant can produce, if given a short delay, will insure defendant's acquittal and vindication, and defendant is entitled to a reasonable time within which to meet these charges, and his counsel make the necessary preparation.

"(15) That criminal court will be in session in Mansfield all of next week, and a petit jury has been summoned to serve for that week, and without any prejudice to the state your petitioner's case could be continued until one of the early days of next week, which would afford him an opportunity to have his counsel fully investigate and determine all matters pertaining to his defense and insure him a fair trial.

"Wherefore premises considered, and the annexed affidavits considered, petitioner prays that a short postponement of this case be granted and for all orders and decrees necessary and for general relief."

For denying this motion the learned trial judge assigns the following reasons:

"The court overruled the motion for a postponement of the case for the reason that the court was personally aware of the fact that counsel had been employed in ample time, and had made ample preparation, had summoned a large number of additional witnesses, and were prepared to meet the simple issues which were to be and were presented on the trial.

"Mr. Atkinson was leading counsel, and he and client procured Mr. Hardin of Leesville to assist in the defense. Mr. Atkinson lives at Mansfield, and stated that he had made several trips to the scene of the homicide. He lived so near the scene that he had ample opportunity to make a thorough study of the facts, and he was thoroughly prepared to go to trial. Mr. Hardin went to Mansfield, as the district attorney states, on February 10th, and had ample time to devote to preparation for the trial of the case. The gloves referred to were mismated gloves, no one could have been mistaken as to their identity. They were picked up a few feet from where deceased was shot, and accused did not deny, but stated, that they were his gloves. Accused could not deny that the gloves belonged to him—too many persons knew them. A reputable white man saw accused with the same gloves the evening before the homicide the next morning before good daylight."

The district attorney's statement is as follows:

"Mr. Atkinson and Mr. Hardin were employed by the defendant prior to the meeting of the grand jury. On February 10, 1918, Mr. Hardin told me that Mr. Atkinson and he had been employed to defend this defendant. He (C. F. Hardin) came to Mansfield on February 10th, solely for the purpose of looking after this case. Mr. Hardin was in Mansfield on Sunday, Monday, and Tuesday prior to the indictment of the defendant. Mr. Atkinson was not sick any during the week before, or the week of the trial. The court knows Mr. Atkinson was not sick any since court opened February 11, 1918."

[1, 2] Accused seems to have delayed unnecessarily to employ counsel; his statement of a conspiracy appears to be uncorroborat-

ed, although his counsel have made some investigation and summoned a large number of witnesses; reliable evidence indicates that the gloves were left by the accused himself at the place where they were found; trial judges have incomparably better opportunities than this court of knowing when a continuance or postponement should be allowed, hence this court has always been most reluctant to interfere with their discretion in the matter.

Judgment affirmed.

O'NIELL, J., dissents.