ST. PAUL, J.
 

 Tlie defendants, Howard Roberson and Luther Plays, were jointly in-dieted, tried, convicted, and sentenced to death, for the murder of one Adolph Epsteine. Their appeal presents seven bills of exception. Before going into these we state the surrounding facts on which they are largely based.
 

 I.
 

 Swartz is a small settlement in the great gas fields of Ouachita parish; there the accused resided.
 

 On the night of March 25, 1924, Adolph Epsteine, a small storekeeper near Swartz, unmarried and living alone, was secretly and brutally murdered in his store.
 

 On July 26, 1924, the defendant Luther Hays was charged with an assault with intent to kill (wholly disconnected with the Epsteine murder) and was placed in the jail, where he has ever since been (and held m
 
 Gommunicado
 
 until counsel was appointed for him in
 
 this
 
 case).
 

 On the night of August 14, 1924, one D. A. Shumaker, an evangelist, was shot and fatally wounded in his tent at Swartz, for no apparent reason, and by some person or persons then unknown.
 

 This aroused some public excitement in the parish, and, from investigations, made
 
 three
 
 parties were suspected of murdering Epsteine, to wit, these two defendants, Howard Roberson and Luther Hays, and also one
 
 Willie Stone,
 
 who seems to have disappeared from this case except in so far as his name appears in connection with a confession given bi the defendant 1-Iays, of which more hereafter.
 

 On Wednesday, September 3, 1924, the parish grand jury met and indicted both these defendants for the murder of Epsteine, and also defendant Roberson for the murder of Shumaker.
 

 On the same day Messrs. E. T. Lamkin and O. W. Easterling of the local (Monroe)
 
 *977
 
 bar were appointed to represent tbe accused “in their arraignment”; whereupon the accused were at once arraigned and pleaded not guilty, “with the reservation to file any preliminary proceedings later.” It will be . observed that Messrs. Lamkin and Easter-ling were appointed to represent the accused only in “their arraignment,” and it does not appear that these counsel took any further part in the defense of the accused.
 

 On Monday, September 8th, the trial judge called a special session of court for the following Monday, to wit, September 15th.
 

 On Wednesday, September 10th, the trial judge appointed, to represent the accused in
 
 both
 
 cases, Mr. Hugh T. Layne of the local bar, and Mr. George Wesley Smith of an adjoining parish, and fixed
 
 both
 
 eases for trial ' on Monday, September 15th.
 

 These appointments were made at about 3 o’clock in the evening; or, at any rate, counsel received notice thereof only about that time. Whereupon, counsel immediately protested that the intervening four days, one a Sunday, would not afford sufficient time to prepare for the defense of
 
 two
 
 murder trials; and since the circumstances of the two killings, as above indicated, show that there could be but one defense to either charge, to wit, an
 
 aMbi, it is
 
 clear that in those four days, one a Sunday, counsel must prepare to account for the whereabouts of both Hays and Roberson from sundown of March 25th to sunrise of March 26th, and of Roberson from sunset until after midnight of August 14th. But, counsel took nothing by their protest.
 

 On Monday, September 15th, this case was called for trial. Whereupon they asked for a continuance on the ground that they had not had time to prepare their defense. To which they annexed their own affidavit, and the affidavits of their counsel, as follows:
 

 “1. Personally came and appeared George Wesley Smith who being duly sworn, says:
 

 “That he is one of the attorneys appointed to defend Howard Roberson and Luther Hays, charged with the murder of Epsteine, and Howard Roberson, charged with the murder of Shumaker; that he and Hugh T. Layne, were appointed Wednesday, September 10th, at 3:30 o’clock in the afternoon, and that he saw his clients for the first time in his life shortly thereafter; that he obtained from his clients durin'g an interview, lasting over two hours, all the information possible at that time;
 
 that he was compelled to be in Little Rocic, Ark., on Tlmrsday,
 
 to fill an engagement previously made, returning to Monroe about 5 o’clock on Eriday morning; that he entered upon the active preparation of these cases before 8 o’clock on the same morning, and that every waking hour since that time has been spent in preparing these eases for trial.
 

 “Affiant states that on Friday he went to Swartz and spent a good share of the day there interviewing and searching for witnesses; that Saturday was spent in interviewing witnesses who came to Monroe, or whom affiant found in Monroe; that the greater part of Sunday was spent in and around Swartz, hunting witnesses; that Friday night, Saturday night, and Sunday night affiant spent in his office until late in the night searching out the law applicable to the case; arranging and classifying the evidence already secured, and in preparing motions which he felt ought to be filed.
 

 “Affiant states that he has ‘been diligent, and has done everything humanly possible to prepare these cases for trial, but has not been able to do so.
 

 “Affiant was appointed by this court to defend these men charged with two murders, and he feels it his duty to inform the court as to the situation, and to state to the court that it has been impossible to get these cases ready for trial within the short time intervening between the appointment and the trial, and, aside from that, affiant feels that he owes it to himself to leave in the record of this case, his own protest, as a citizen, as a lawyer and officer of this court, and as one of the attorneys for the accused, against any unseemly haste in judicial .proceedings where the life or liberty of a human being is at stake, and particularly the unseemly haste in this case.
 

 “Having done so, affiant feels he has done his duty to the court, to himself, and to his client, and let come what may his own conscience will henceforth remain untroubled.”
 

 2. “Personally came and appeared Hugh T. Layne, who being duly sworn deposes and says:
 

 “That he is one of the attorneys appointed by this honorable court to defend Howard Roberson and Luther Hays, charged jointly with the murder of Adolph Epsteine, No. 17691
 
 *979
 
 on the criminal docket, and to defend Howard Roberson, charged with the murder of Shumaker, ,No. 17692, on the criminal Docket.
 

 “That he and George Wesley Smith, were appointed, Wednesday September 10th, at 3:30 o’clock in the afternoon, and that they saw their clients, for the first time, some time immediately after their said appointment.
 

 “That said cases, both of them, were set for trial on Monday September 15, 1924, under the protest and without the consent of either counsel so appointed.
 

 “That he has read the affidavit of George Wesley Smith, pertaining to and setting out the handicaps and lack of time to prepare a defense for the accused, and that all of the facts therein set out are true, and he does hereby corroborate each and every fact so stated therein.
 

 “Affiant further declares under oath, that for the following reasons, he nor his associate, George Wesley Smith, nor both of them jointly, have not had sufficient and a just period of time 'in which to prepare a proper defense. for the accused.
 

 “He has had only three clear days since his appointment to prepare a defense for the trial of two murders, cases both set for trial the ■same day.
 

 “That for lack of sufficient time, he has not been able to locate and talk with a number of persons whose testimony would be of a material benefit to the defense, and that if he had sufficient time, he would locate said parties and have them summoned. *
 
 * * ”
 

 What then transpired is shown by the minutes of court for that day, which we here transcribe in full; after which the trial proceeded, with the result stated in the opening paragraph of this opinion. Said minutes being as follows:
 

 “The accused and each of them being present in open court and represented by their attorneys, Hons. Geo. Wesley Smith and Hugh T. Layne, the accused, with permission of the court first had and obtained, withdrew their former pleas of not guilty, and filed a motion to quash. Motion taken up. Testimony adduced and closed. Motion to quash overruled. Bill of exception reserved by the accused. The accused and each of them were duly arraigned and pleaded not guilty. Case set for trial on this date. Motion for continuance filed, taken up and árgued. At this hour, 3:30 p. m., the list of witnesses furnished by counsel for the defendants to be summoned in this case were called, 32 in number, 30 of whom answered present. The sheriff reporting that one witness, to wit, M. C. Lofton, is absent from the state of Louisiana, and has been for some time; and one witness, Mr. KinCade, is absent from the parish, and no service has been made upon him. It is now ordered that the further trial of this case be postponed until 7:30 p. m. on this date, and that, in the meantime, all witnesses called and who have answered shall assemble in the courtroom in charge of the sheriff, in order that counsel for defendants may have an opportunity to examine them and make further preparations for the trial of the case. It is further ordered that all persons except said witnesses, the sheriff, and his deputies, counsel for defendants, and defendants be excluded from the courtroom during this recess of the court. It is further ordered that the witnesses answer all such questions as may be propounded to them by counsel for defendants. The motion for continuance is overruled by the court; this time being allowed defendants in' which to prepare for the trial. Bill reserved by each defendant. Motion for severance filed ' on behalf of Howard Roberson. Motion for severance argued and overruled. Defendants reserve a bill. * * * ”
 

 II.
 

 Bills of Exception Nos. 2 and
 
 4-— These bills will be considered together, ‘ as both relate to the time given counsel in which to prepare for defense. The first relates to their protest against the fixing of the case for the
 
 fifth
 
 day after their appointment. The other relates to the refusal of the trial judge to grant the continuance asked for.
 

 In his per curiam to the former, the trial judge says:
 

 “No good reason was suggested by counsel why they could not get ready for trial. Counsel are both experienced, able lawyers; there were no law points involved with which they .were not already familiar. All they had to do was to get in touch with the witnesses, all of whom live in the parish and are easily accessible.”
 

 The above per curiam was written
 
 after
 
 the close of the trial, when the judge had seen the witnesses actually summoned toy defendant, and heard the law points actually made by counsel. But the answer is, that at the time counsel protested against the
 
 *981
 
 fixing of the case at a date so early, they liad not yet seen the accused, and knew nothing whatever about the case. And therefore it was no more possible for the trial
 
 judge
 
 than for counsel, or for this court, to know what other witnesses the defendants
 
 might
 
 have brought, and what other law points might have been raised, had counsel been given more time in which to prepare. So that this per curiam answers itself.
 

 In his per curiam to the bill taken to his refusal to grant a continuance, the trial judge says: .
 

 . “Counsel suggested to the court, and filed affidavits that they had not had sufficient time in which to prepare for the trial of the accused, but they did not suggest to the court, nor do they set out in the affidavits which they have filed and which are attached hereto, just why they could not get ready, that is, just what there was to do that could not be done in the time allotted. As to the law involved, no complicated questions arose;’ counsel did not suggest to the court that they did not have time to familiarize themselves with the law applicable. They are both experienced, able lawyers, and the court was not informed that they needed more time in which to look up the law.
 

 “It was not suggested, nor is it set out in the affidavits attached, that they could not get in touch with all witnesses named^by their clients. Mr. Smith in his affidavit sets out that he. spent some time Friday “searching” and “hunting” for witnesses, but it has not been claimed that he did not find all witnesses wanted; so far as the court was informed all the witnesses were summoned, and they all answered when called on Monday morning except two; one of whom was out of the state, and one out of the parish. No delay was asked on account of this absence. After all defendants’ witnesses appeared, the court recessed from 3:30 to 7:30 so that counsel could have access to the witnesses, as is set out on the minutes, the court’s ruling being copied therein.
 

 “The defense in this ease was an alibi. Numerous witnesses testified that both defendants were elsewhere when deceased was killed. Evidently the jury did not believe them.
 

 “After hearing the case, I am thoroughly satisfied that counsel had all the time necessary.”
 

 The record shows that the trial began Monday night, September 15th, and continued through Tuesday and Wednesday, September 16th, 17th; that the case was submitted to the jury on Wednesday, September 17th, who brought in their verdict on Thursday, September ISth; that defendants’ motion for a new trial was overruled on Saturday, September 20th, on which day also defendants were sentenced, their bills of exception signed, and their appeal taken.
 

 It is quite true that the matter of granting or refusing a continuance lies in the sound discretion of the trial judge, which will not be interfered with unless in extreme cases, but in our opinion
 
 this
 
 is one of those extreme cases. As we have seen, on the
 
 afternoon
 
 of Wednesday 10th the case was fixed for trial for the
 
 forenoon
 
 of Monday the 15th; that is to say, on the
 
 fifth
 
 day thereafter. To say nothing of
 
 capital
 
 cases in which, this court has held the fixing of such a case within less time than
 
 sice
 
 days to have been improper, we also find one ease in which this court has held that a fixing for the
 
 sixth
 
 day did
 
 not
 
 allow sufficient time for preparation, to wit, State v. Martin, 145 La. 35, 81 So. 747, and
 
 no case
 
 in which any less time was thought sufficient. We find
 
 two
 
 cases in which a fixing on the
 
 seventh
 
 day thereafter was held sufficient. State v. Johnson, 36 La. Ann. 852, and State v. Chitman, 117 La. 950, 42 So. 437.
 
 Not once
 
 has this court approved the fixing of such a case for any earlier than the
 
 seventh
 
 day thereafter except in State v. Gilliard, 143 La. 604, 78 So. 978, wherein the case was fixed for the
 
 sixth
 
 day after arraignment; but it appeared that counsel had been employed and
 
 at vyorlc on the
 
 case more than
 
 ten
 
 days before the trial.
 

 On the other hand, this court has approved of the fixing of such cases for the
 
 eighth
 
 day thereafter. State v. Satcher, 124 La. 1035, 50 So. 835.
 

 
 *983
 
 In the case before us we find that counsel were given only four days in which to prepare for the defense of
 
 two
 
 wholly distinct capital cases, of which four days
 
 one
 
 was a Sunday, and another not available to one of the counsel because of a
 
 -previous
 
 engagement already undertaken by him.
 

 We think the trial judge erred in refusing the continuance.'
 

 III.
 

 Bill of Exception Vo.
 
 7. — This hill was reserved by the defendant
 
 Says
 
 to the admission of an alleged
 
 voluntary
 
 confession made by him. The confession was made on the night of August 28th. It will be remembered that this defendant had been held in jail, sequestered from all communication with his friends, from July 26th; and that Shumaker was assassinated during that time, to wit, on Apgust 14th, this last crime being laid upon the codefendant herein (Roberson). This confession was obtained after some three to four hours questioning of Hays by the sheriff and his deputy; this being the
 
 tlwrd
 
 questioning to which Hays had been subjected by them on as many consecutive days, the other questionings lasting some half hour or more, and resulting in nothing but causing the defendant to break down and cry.
 

 It does not appear that Hays was subjected to any torture or other harsh methods for the purpose of extorting a confession, but he says that he made the confession for the purpose of ridding himself (“getting shet”) of his jailors who seemed bent on obtaining his confession of the crime.
 

 Whether or not the defendant Hays was justified in his conclusion that he could not “get shet” of the sheriff and his deputies without making some sort of confession, or admission, or
 
 statement
 
 about the
 
 Epsteine
 
 murder, may be judged from the foregoing recital, and from the following signed public statement issued “to the people of Ouachita parish” by said sheriff; and published in the daily “Monroe News Star,” of September 2d, 1924, viz:.
 

 “On Thursday, August 14, 1924, Mr. D. A. Shumaker was’shot and killed at Swartz, La., about midnight, while he and his associates were conducting a series of religious services. I was notified of this crime about 2 o’clock a. m. on the morning of August 15th, and Mr. Roper (the deputy) and myself immediately left for the scene of the crime. We worked night and day in order to run down every clue possible and to bring the guilty parties to justice; therefore, with the help of the Lord, according to evidence and information obtained, within one week after the crime was committed we had all of the accused parties in custody.
 

 “Saving thus far succeeded in the Shumaker Case, we then felt that we could solve the mysterious murder of Adolph Epsteine who was ’brutally murdered in his store on the night of ■March 25, 192J/. Maintaining the method of a secret investigation with reference to the movements and evidence obtained, we worked several days .on the Epsteine Case, and finally, according to information and evidence obtained, and within another week’s time, placed the parties responsible for this murder in jail. *
 
 * * ” (Italics ours.)
 

 The statement then concludes with a statement that the evidence obtained has been submitted to the district attorney, and would be acted on by the grand jury in special session.
 

 The defendants were indicted next day.
 

 We do not think the confession of this defendant was such a confession as the Constitution of this state permits to be used against one accused of crime. The Constitution of the United States provides simply, “No person *
 
 * *
 
 shall be compelled in any criminal case to be a witness against himself * * * ” (Amendment 5); nevertheless, in a case recently decided by the Supreme Court of the United States (Ziang Sung Wan v. United States [No. 127, of October term 1924, decided October 13th], 45 S. Ct. 1, 69 L. Ed. —), where the facts were somewhat similar to the case at bar, though undoubtedly far more flagrantly coercive, it was held that a confession was not voluntarily given
 
 *985
 
 merely because given without threat or promise, but that:
 

 “A confession is voluntary in law if, and only if, it was 'in fact, voluntarily made. _ A confession may have been given voluntarily, although it was made to .police officers whilst in custody, and in answer to an examination conducted by them. But a confession obtained by compulsion must be excluded whatever may have been the character of the compulsion, and whether the compulsion was applied in a judicial proceeding or otherwise.” Citing Bram v. United States, 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 588, and others.
 

 See, also, State v. Alexander, 109 La. 557, 33 So. 600; State v. Albert, 50 La. Ann. 481, 4S5, 23 So. 609.
 

 But our own Constitution of 1921 goes much further than does the Constitution of the United States, or any former Constitution of this state, perhaps even further than the Constitution of any other state. It says (article 1, § 11):
 

 “No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. No person under arrest shall bo subjected to any treatment designed by effect on body or mind to compel confession of crime, nor shall any confession be used against any person accused of crime unless freely and voluntarily made.”
 

 And our conclusion is that any persistent effort to obtain a statement from a person in custody, by repeatedly subjecting him to cross-examination after he has refused to make such statement, is “treatment designed by effect on body or mind to compel a confession of crime”; and that a confession so obtained cannot be used against an accused.
 

 IY.
 

 Bill of Exception No. 5.
 
 — The bill was reserved by the defendant Roberson to. a refusal of the trial judge to grant him a severance on the ground that the state intended to use a confession given by Hays, in which the latter implicated this exceptor. State v. Taylor, 45 La. Ann. 605, 12 So. 927; State v. Lee, 46 La. Ann. 623, 15 So. 159; State v. Desroche, 47 La. Ann. 651, 17 So. 209.
 

 But since we are granting a new trial herein because defendants were not granted the continuance to which they were entitled, and since we are now holding that the confession of Hays is inadmissible even against him, we find no reason for passing upon this bill at this time, for that is the sole ground on which defendant Roberson applies for a severance, and the only way in which he might be prejudiced by a joint trial. That confession being now excluded, he is no longer entitled to a severance on that ground when again tried.
 

 V.
 

 Bill of Exception No.
 
 6. — This bill was taken to the refusal of the trial judge to have a full panel of twelve jurors present in the jury box in front of the accused at all times while the jurors were being examined on their voir dire. Of this bill counsel for defendants say, “We believe that it is the better practice to do so.
 
 We know of no lato to
 
 make it mandatory. * * * We * * * submit (the point) without further remarks.” We think we might also
 
 dispose of it
 
 in like manner. But we prefer to say that since it is not
 
 mandatory
 
 on the court to select a jury according to any prescribed form, it follows that a jury may be selected
 
 in any way
 
 that permits the accused to examine each juror touching his qualifications, and to exercise as to such juror his right to challenge for cause, or peremptorily, as the case may be.
 

 VI.
 

 Bill of Exception No. 3.
 
 — This bill has reference to a motion to quash the special
 
 venire
 
 of jurors called for the special term of court. The granting of a new trial herein makes further inquiry into this bill unnecessary.
 

 
 *987
 
 VII.
 

 BUI of Exception So.
 
 1. — This is a formal exception to the refusal of the trial judge to grant a
 
 new trial
 
 on the ground that the verdict was contrary to the evidence. It presents nothing for this court to pass upon since we cannot review questions of fact •touching the guilt or innocence of the accused.
 

 Decree.
 

 The judgment appealed from is there reversed as to both defendants, and it is now ordered that the verdict herein be set aside, and both defendants granted a new trial according to law.
 

 LAND, J., dissents and hands down reasons.
 

 OVERTON 'and BRUNOT, JJ., concur in decree.
 

 THOMPSON, J., takes no part.