HAMLIN, Justice.
 

 The defendant appeals from his conviction and sentence to death for the murder of John O’Brien on July 26, 1960. LSA-R.S. 14:30. '
 

 During the course of trial some confusion arose as to the numbering of bills of exceptions, but we find from the record that the trial judge assigned numbers to them; as thus numbered, we are presented with ten bills of exceptions for our consideration.
 

 Bill of Exceptions No. 1 was reserved when the trial judge overruled and denied defendant’s motion to quash the indictment filed against him.
 

 In substance, the motion to quash was leveled primarily at the insufficiency of the indictment insofar as it failed to meet and satisfy the requirements of ‘the LSA-Constitution of 1921, particularly Article I, Sections 9 and 10. In brief filed in this Court counsel argue:
 

 “It is respectfully submitted that in this case, the indictment does not sufficiently inform Bobby Milton McAllister of the nature and cause of the accusation against him. It is further submitted that this deficiency cannot be corrected by a bill of particulars.
 

 “It is further submitted that the code of criminal procedure as adopted ■ in 1928 and particularly Article 235 insofar as it provides for a short form of indictment for murder, is unconstitutional for the reasons set forth above and in the original motion to quash.”
 
 [1]
 

 The Bill of Indictment recites in part:
 

 “That, Calvin Newman Carney and Bobby Milton McAllister, acting to
 
 *49
 
 gether, aiding and assisting each other, late of the Parish of Tangipahoa, on the 26th day of July in the year of Our Lord One Thousand .Nine Hundred and Sixty with force and arms in the Parish of Tangipahoa, aforesaid, and within the jurisdiction of the Twenty-First Judicial District Court of Louisiana, for the Parish of Tangipahoa, murdered John O’Brien, in violation of Article 30 of the Louisiana Criminal Code.”
 
 [2]
 

 LSA-R.S. 15:235 provides that the following form of indictment may be employed in the case of a charge of murder: “A. B. murdered C. D.”
 

 In State v. Fulghum, 242 La. 767, 138 So.2d 569, the defendant was charged with murder under the short form of indictment ; • he filed a motion to quash, averring "that insofar as LSA-R.S. 15 :235 related to the crime of murder it was unconstitutibnal, null, and void, for the reason that it did not require the recital of any facts constituting a crime under the laws of Louisiana; he also contended that he was deprived of certain enumerated constitutional rights. We found no merit in the contentions, stating that the constitutionality of LSA-R.S. 15 :235 had been set at rest. We said, “This Court has found that a murder indictment, drawn in short form, adequately informed the defendant of the nature and cause of the accusation. * * * ” See, State v. Elias, 234 La. 1, 99 So.2d 1; State v. Scott, 223 La. 769, 66 So.2d 802; State v. Holmes, 223 La. 397, 65 So.2d 890.
 

 Defendant herein argues, however, that in State v. Straughan, 229 La. 1036, 87 So.2d 523, this Court recognized that the specific short forms were not sufficient in all instances ;
 
 [3]
 
 he urges insufficiency in the indictment.
 

 In State v. Eyer, 237 La. 45, 110 So.2d 521, this Court explained the Straughan
 
 *51
 
 case supra,
 
 [4]
 
 by stating: “The Straughan case does not support the defense contention. On the contrary, it recognizes a long line of decisions of this court which hold that the short forms set out in R.S. 15:235 for charging such well-defined crimes as murder, theft, simple and aggravated rape, etc., meet the generally accepted test for constitutional sufficiency. The Straughan case is only authority for the proposition that the amendment to this section by the 1944 legislature, which sought to permit the state thereunder to charge an accused in either an indictment or information by ‘using the name and article number of the offense committed,’ was unconstitutional.”
 

 Murder, being a well defined crime, may therefore be charged in the short form of indictment as employed herein.
 

 Bill of Exceptions No. 1 is without merit.
 

 Bill of Exceptions No. 2 was reserved to the overruling and denying of defendant’s motion, to have the court declare insufficient the answers to the bill of particulars filed by the district attorney; the motion recites in part:
 

 “ * * * your mover cannot safely conduct his defense in view of these vague and general answers filed by the Honorable District Attorney herein, and your mover respectfully submits that said answers are vague and general in the following respects, to-wit:
 

 “2. ‘If the defendant is charged with murder, under what codal article and/or subsection is he being prosecuted?’ This question was answered ‘Defendant is charged under Article 30 of the Louisiana Criminal Code both subsections.’ The indictment makes no mention of the subsections under which defendant is charged and therefore the District Attorney should choose which subsections he intends to use rather than attempt to use a general catch-all answer and defendant is entitled to know the exact subsection in order to prepare his defense.
 

 “8. ‘State what the cause or causes of John O’Brien’s death were and the date and time of the same ?’ This question was answered ‘Decedent’s death was caused by wounds inflicted by the pistol of the defendant in the early morning hours of the date charged in the indictment.’ The defendant is entitled to know the exact time of death in order to properly prepare his defense and therefore this answer should be deemed insufficient for lacking such’ pertinent information.
 

 “Question number 9 lacks the same information and is accordingly insufficient. * * * ” '
 

 
 *53
 
 LSA-R.S. 14:30 provides that:
 

 “Murder is the killing of a human being,
 

 “(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
 

 “(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.
 

 “Whoever commits the crime of murder shall be punished by death.”
 

 In State v. Rowan, 233 La. 284, 96 So.2d 569, this Court stated that Article 30 of the Louisiana Criminal Code describes two sets of circumstances under which the crime of murder can be committed. We also said that the crime could be committed under any one of the two sets of circumstances as well as under a combination of the circumstances, set out in Subsections (1) and (2). We then held, “The State’s answer to the motion for a bill of particulars shows that the crime in the instant case is alleged to have been committed under circumstances set out in both subsections of the article. In short, murder can be committed under Subsection (1)' or under Subsection (2) of the article or under both subsections at the same time, which is exactly what is alleged to have happened in the instant case. Consequently the judge erred in ordering the State to elect.” See, State v. Thomas, 240 La. 419, 123 So.2d 872.
 

 Under the above jurisprudence the trial judge was correct in the instant case in not ordering the State to allege under which subsection of LSA-R.S. 14:30 it was proceeding. In its answers to Bill of Particulars the State said that it was attaching a photostatic copy of a statement made by the defendant which was self-explanatory. This statement, later introduced in evidence as defendant’s confession, supplied ample facts for counsel to understand that the State had charged defendant under both Subsection (1) and Subsection (2).
 

 The State’s answer, “Decedent’s death was caused by wounds inflicted by the pistol of the defendant in the early morning hours of the date charged in the indictment,” to Question No. 8, and the statement annexed to the answer, supplied information as to the cause of death and as to the time of death.
 

 Question No. 9 read, “If the defendant is being charged and prosecuted under Article 30, Subsection 2, what was the date and time of the perpetration or attempted perpetration of any felony on the part of the defendant?” The State answered that the date and time were the same as those set forth in its answer to Question No. 8.
 

 We agree with the trial judge that the answers supplied by the State were suffi
 
 *55
 
 cient to inform the defendant of the nature of the charges preferred against him.
 

 Bill of Exceptions No. 2 is therefore without merit.
 

 Bill of Exceptions No. 3 was reserved to the trial court’s overruling and denying a motion of defendant’s counsel for a psychiatric examination of the defendant.
 

 The events leading to the reservation of this bill are to the effect that the defendant was arraigned on November 10, 1960 and plead “Not Guilty.” His counsel was given thirty days to file any technical pleadings; a motion for a bill of particulars was filed December 13, • i960. Answers were filed May 18, 1961; included therein was a statement which-was'later introduced in evidence as the confession of the defendant. The answers to'the motion for a bill of particulars were 'received by counsel for the defendant no, later than two days after they were filed. On June 5, 1961, the motion to quash was-taken up, argued and overruled; counsel for the defendant then filed the following -motion for a lunacy commission to examine the defendant:
 

 “That as the attorneys for Bobbie Milton McAllister, the defendant herein, it is ou'r belief that the said defendant is not mentally capable of assisting in his-defense, because of his present mental condition.
 

 “That the defendant, Bobbie Milton McAllister, was at the time of the alleged commission of the alleged crime was not mentally capable of distinguishing between right and wrong.
 

 “That a motion for bill of particulars was filed herein shortly after the defendant was indicted and that no answer was received from the office of the District Attorney until approximately one week prior to the date of this trial; that included in the answers-to the bill of particulars was a purported confession, which is alleged to-have been signed by the defendant; that this is the first opportunity that the attorneys for the defendant had to-examine the contents of the alleged 'confession; that the contents thereof indicate that at the alleged time of givingof the alleged confession, if the said defendant did actually give the confession that he was not mentally competent; and further that at the time-of' giving the alleged confession the defendant was not mentally capable of' understanding the gravity of the situation confronting him.
 

 “Wherefore the said defendant, Bobbie Milton McAllister, through his undersigned attorneys pray: That an order issue herein transferring the said Bobbie Milton McAllister to the East Louisiana State Hospital in Jackson
 
 *57
 
 for -a period of observation and examination by the psychiatric staff of the said institution and that this proceeding be stayed until such time as a report is received regarding the mental condition of the defendant, Bobbie Milton McAllister, at the time of the alleged commission of the crime, at the time of the alleged giving of the confession and presently.”
 

 The motion for psychiatric examination filed June 5, 1961 was argued and overruled. The case then proceeded to trial.
 

 In this Court counsel for the defendant contend that the trial judge abused his discretion in not ordering the defendant transferred to the East Louisiana State Hospital for .observation and examination, and that LSA-R.S. 15 :267 is a clear mandate to the court to have the court examine the defendant for the purpose of determining his mental condition; they rely on the case of State v. Gunter, 208 La. 694, 23 So.2d 305.
 

 In his per curiam the trial judge states:
 

 “There is no allegation and no testimony offered to justify there was any possibility or probability of the defendant being insane at the time of the alleged commission of the alleged crime, or at the time that he gave the confession. The question of his sanity at the time of the commission of the said crime was not at issue because there was no plea filed ‘not guilty by reason of insanity.’ The Court feels that there must be some evidence or facts presented to it to show that there was a possibility or probability of insanity in order to justify the order requested in this motion. The motion .further alleges that the contents of the statement made by the defendant would indicate that he was not mentally competent. The Court fails to find, or, reach any such conclusion by reading the statement. The
 
 motion was
 
 therefore overruled.”
 

 We have examined the statement alleged to have been given by the defendant after the commission of the instant crime; we find nothing in its contents to indicate that defendant was not mentally competent to give the statement, or that he ’was not mentally capable of understanding the gravity of the situation confronting him at the time he gave the alleged confession.
 

 The statement is an admission of guilt. In answer to questions propounded to him the defendant said in gist that previous to the date of the present offense he and Calvin Newman Carney had gone to the scene of the instant crime (a filling station) for the purpose of robbery, but they felt that the time was not propitious; that the next day (Monday, July 25, 1960) he bought a pistol, a 32 colt, for which he paid a man $17.00; that during the early hours of Tuesday morning he and Carney met; that at his request Carney called his (defendant’s) wife and the two spoke with her; that later the
 
 *59
 
 two went to the filling station where the attendant, the victim of the instant crime, emerged and stood approximately four feet away from the car in which he and Carney were riding; that without giving the attendant any warning, he shot him. The following questions and answers are pertinent:
 

 “Q. How many times did you shoot him?
 

 “A. I shot him three times.
 

 “Q. All three while he was standing up ?
 

 “A. I shot him the first time when he was standing up and then he fell to his knees and when he fell to his knees, he fell on backwards and I went to the cross pumps and shot him again and then I shot him another time.
 

 "Q. After he was lying on the ground ?
 

 “A. Yeh.
 

 “Q. Was he lying face up or face down?
 

 “A. He was lying sideways.
 

 “Q. You shot again because you didn’t know whether he was dead or not?
 

 “A. I figures he was dead, but I just didn’t want to take no chances.
 

 “Q. After you shot him, now what did you do?
 

 “A. Well, I took the money out of the outside cash register and Calvin Carney took the money out of the inside cash register and then that’s when we took off. * * * ”
 

 The case of State v. Gunter, 208 La. 694, 23 So.2d 305, is not apposite. In that matter, there were certain evidentiary facts presented to the court which made the sanity of one of the defendants questionable; this Court held that the trial judge abused his discretion by not granting a sanity hearing to that particular defendant.
 

 In the instant matter, there were no evidentiary facts of insanity, nor was there any showing of a possibility or probability of insanity which would have justified the granting of the order requested in the motion.
 

 We do not find that the trial judge abused his discretion in not granting the motion for a psychiatric examination.
 

 Bill of Exceptions No. 3 is without merit.
 

 Bill of Exceptions No. 4 was reserved to the overruling of a motion by counsel for the defendant to have the courtroom cleared of prospective jurors prior to any discussion of the alleged confession or statement and to have the trial stayed until such time as the mental condition of the defendant could be determined.
 

 In contending that the ruling of the trial judge was erroneous, counsel for the defendant argue in brief that the clearing of the courtroom “was necessary because de
 
 *61
 
 fendant’s attorneys felt that it was necessary to discuss the confession and its contents during their argument on the motion for phychiatric examination and on the motion for continuance. The court refused to do so. Defendant’s attorneys feel that this is prejudicial to the rights of the defendant. This discussion came prior to the Court’s ruling on the admissibility of the confession and should not have been discussed in the presence of any juror or prospective jurors.”
 

 Defendant has not shown, and we do not find that he was prejudiced by the ruling of the trial judge. LSA-R.S. 15:557. We believe that in the following per curiam the trial judge clearly answers the contentions advanced by counsel:
 

 “The Court overruled this motion because the question of the confession would not come up until an attempt was made to offer it. The defendant offered no evidence as to his condition and when the question of the confession came up the jury had been empanelled. The Court retired the Jury in order to hear the testimony as to the confession. After the Court heard the testimony then the Jury was returned, and the testimony was repeated to the Jury. The Court does not feel that the defendant could go into the question of the alleged statement or confession prior to the time the Jury was empanel-led and not until the State tendered testimony to prove the confession and the facts surrounding it.”
 

 Bill of Exceptions No. 4 is without merit.
 

 Bill of Exceptions No. 5 was reserved to the trial court’s denial of defendant’s motion for a continuance.
 
 [5]
 

 Counsel for the defendant state that they did not have sufficient time to prepare a defense to the alleged confession, its contents having been made known to them only a few days prior to the date of trial.
 

 The facts of record show that the alleged confession was taken on the afternoon of July 27, 1960; it was written in shorthand by Mrs. Corinne Watson, Deputy Sheriff and Stenographer of the Tangipahoa Parish Sheriff’s Office; it was thereafter transcribed and handed to Officer Hulon Simmons on August 3, 1960; Officer Simmons presented the confession to the defendant who read and signed it on the same day, August 3, 1960. Defendant’s attorneys made no attempt to secure a copy of the confession; they received a copy on approximately May 20, 1961, when the answers to bill of particulars were given to them. On June 5, 1961 the case came up pursuant to regular order of assignment; on June 10, 1961 the jury was completed, opening state
 
 *63
 
 ments were made, and the taking of testimony was heard.
 

 In his per curiam the trial judge states that counsel for the defendant had some fifteen days in which to prepare a defense to the alleged confession, and that he feels that this was sufficient time.
 

 In State v. Roberson, 157 La. 974, 103 So. 283, this Court in considering a motion for a continuance in which counsel contended that there was not sufficient time to prepare a defense, the matter being fixed for trial the fifth day after their appointment, stated:
 

 “ * * * We find two cases in which a fixing on the seventh day thereafter was held sufficient. State v. Johnson, 36 La.Ann. 852, and State v. Chitman, 117 La. 950, 42 So. 437. Not once has this court approved the fixing of such a case for any earlier than the seventh day thereafter except in State v. Gilliard, 143 La. 604, 78 So. 978, wherein the case was fixed for the sixth day after arraignment; but it appeared that counsel had been employed and at work on the case more than ten days before the trial.
 

 “On the other hand, this court has approved of the fixing of such cases for the eighth day thereafter. State v. Satcher, 124 La. 1015, 50 So. 835.”
 

 The matter of granting or refusing a continuance addresses itself to the sound discretion of the trial judge; a review on appeal is granted when there is an arbitrary or unreasonable abuse of such discretion. LSA-R.S. 15:320. State v. Jones, 233 La. 775, 98 So.2d 185; State v. Collins, 242 La. 704, 138 So.2d 546; 19 LLR 417.
 

 Under the circumstances of this case, fifteen days were not inadequate to prepare a defense to the alleged confession. We do not find that the trial judge abused his discretion in refusing to grant a continuance to counsel for the defendant.
 

 Bill of Exceptions No. 5 is without merit.
 

 Bill of Exceptions No. 6 was taken to the overruling of a motion by counsel for the defendant which requested that all witnesses be placed under the rule and removed from the courtroom during the conducting of the trial; the trial court ruled that several of the Deputy Sheriffs and the Assistant District Attorney were necessary for the conducting of the trial and would be excluded from the rule of sequestration.
 

 Relying on the case of State v. Carter, 206 La. 181, 19 So.2d 41, counsel for the defendant argue that because there were Deputies available for courtroom duty who took no part in the investigation and the District Attorney was present in the courtroom, the action of the trial judge in excluding the Deputies and the Assistant District Attorney from the rule amounted to gross arbitrary abuse of discretion. They con
 
 *65
 
 tend that defendant was deprived of his right to cross-examine these important witnesses, and that for this reason defendant did not receive a fair trial.
 

 In his per curiam the trial judge states, “The Court found that the Deputies were necessary for the conducting of the trial, and the Court certainly could not exclude the Assistant District Attorney even though he was a witness. The Deputies, who were witnesses, were in and out of the Courtroom and not present all the time. The Courtroom was fairly well crowded and this man was charged with a very serious crime. The Court, therefore, considered that it was necessary that they be present in the Courtroom during the conducting of the trial.”
 

 We find that this bill reduces itself to a question of whether the trial judge abused the discretion vested in him under LSA-R.S. 15 :371.
 
 [6]
 

 In State v. Carter, 206 La. 181, 19 So.2d 41, the defendant was charged with attempting to murder two Deputy Sheriffs. Bills of exceptions were reserved to the court’s ruling in refusing to exclude three Deputy Sheriffs and Special Investigators of the District Attorney’s Ofifice from the courtroom during the trial. On appeal this Court held that the trial judge abused his discretion; we stated, “We do not think that under the provisions of Article 371 of the Code of Criminal Procedure district judges have the right to make a rule of court that all court officers are exempt from the order of sequestration of witnesses regardless of the importance of the witness’ testimony in the case. If this were true, then the trial judges, by making such a rule of court, could, to a great extent, nullify the provisions of the above article and, in certain instances, deny the defendant a fair and impartial trial. We reiterate, the article does not give a judge an absolute and unreviewable discretion but one that must be exercised in such a way as not to deprive the accused of his right to a fair and impartial trial.”
 

 On application for rehearing in the Carter case, supra (which was refused), this
 
 *67
 
 Court stated in a per curiam, “ * * * In deciding questions like the one presented in this case, each case must be decided according to the circumstances there shown to exist. In the case at bar, the district judge did not say, nor did he intimate, that the presence of the three deputies and the investigator in the courtroom during the progress of the trial was necessary in order to assist the district attorney in making out his case. We are not informed as to why the trial judge ruled as he did, and from the record brought up we do not understand why the three deputies and the investigator were permitted to remain in the courtroom during the progress of the trial while all other witnesses, both for the State and for the defense, were put under the rule.” See, State v. Ferguson, 240 La. 593, 124 So.2d 558; 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237; State v. Davis, 241 La. 974, 132 So.2d 866.
 

 In State v. Ferguson, supra, we held that the trial judge did not abuse his discretion in permitting a City Detective (a witness for the State) to remain in the courtroom during trial. We found that the per curiam of the trial judge implied that the officer was permitted to remain in the courtroom in order to assist the District Attorney in the presentation of his case.
 

 In State v. Davis, supra, we held that the trial judge did not abuse his discretion in not sequestering expert witnesses during a hearing to determine the present sanity of the defendant therein.
 

 In the instant matter, the trial judge has clearly stated his reasons for permitting the witnesses excluded from the rule to stay in the courtroom during trial; we find no abuse of his discretion.
 

 “ * * * The sequestration of witnesses is within the sound discretion of the court and this Court has on numerous occasions held that a verdict of a jury will not be set aside in the absence of any showing of an abuse of this discretion.” State v. Lea, 228 La. 724, 84 So.2d 169; 350 U.S. 1007, 76 S.Ct. 655, 100 L.Ed. 869.
 

 We have examined the record and find that the defendant was given full opportunity to cross-examine the witnesses who remained in the courtroom; in fact, the record shows that they were cross-examined.
 

 Although counsel for the defendant aver that the defendant was prejudiced by the ruling of the trial judge, defendant has not shown, and we fail to find that he suffered any prejudice. LSA-R.S. 15 :557.
 

 Bill of Exceptions No. 6 is without merit.
 

 Bill of Exceptions No. 7 was reserved to the trial court’s overruling defendant’s objection that the alleged confession was not made voluntarily, and to the trial court’s ruling that same was freely and voluntarily made and admissible in evidence.
 

 Counsel for the defendant contend that the alleged statement and/or confession was made under the influence of threats, fear,
 
 *69
 
 duress, intimidation, or promise
 
 by
 
 the Sheriff’s Department of Tangipahoa Parish.
 

 In State v. Ferguson, supra, the following correct statements of law were made:
 

 “It is, of course, fundamental that no person under arrest shall be subjected to any treatment designed to compel a confession of crime and any confession, which is not voluntarily made, cannot be used against the person accused. Section 11 of Article 1 of the Constitution of 1921. See also Articles 451 and 452 of the Code of Criminal Procedure (R.S. 15:451, 452). This Court has consistently demanded a strict compliance with the constitutional provision and, in a legion of cases, it has been repeatedly stated' that the State has the burden of establishing that a confession is free and voluntary by affirmative convincing proof before it can be received in evidence and, in a number of cases, beyond a reasonable doubt.
 

 “On the other hand, the jurisprudence is well settled that it is permissible for law enforcement officers to exhort or adjure an accused to tell the truth provided that the exhortation is not accompanied by an inducement in the nature of a threat or one which implies a promise of reward. See State v. Williams, 129 La. 215, 55 So. 769, Ann.Cas.1913B, 302.” See, State v. Scott, Jr., 243 La. 1, 141 So.2d 389.
 

 The testimony of record reflects that the defendant was arrested and brought to the Sheriff’s Office about midnight, July 26, 1960, or, during the early hours of July 27, 1960. He was thereafter questioned by Thomas I. Sanders, Sheriff of Tangipahoa Parish, concerning the alleged offense. The Sheriff testified that he used no profanity towards the defendant and that he advised him of his rights; that several Deputies performing the usual work of investigation of a crime, such as the instant one, were in and out of the room where the defendant was being questioned. The questioning, he said, was intermittent and usually lasted for a period of thirty minutes; that the examination was finished at about 6:30 in the morning. When pressed, the Sheriff stated that he remembered questioning the defendant about the John O’Brien killing, but that he did not remember any specific questions asked or specific answers given by the defendant.
 

 The defendant testified that the Sheriff “cussed” him all the way through, and that he called him a son-of-a-bitch thirty times. He said that he was permitted to sleep for intervals of fifteen minutes, being put in the front cell, and was then brought back for questioning; that the questioning was for about forty-five minutes or a half hour, and that he was questioned three or four
 
 *71
 

 times. The
 
 defendant further testified that six or eight Deputy Sheriffs were present, and that he was questioned by Deputy Hulon Simmons. He stated that he was not hit; that he was not promised anything and was not threatened.
 

 Mrs. Corinne Watson, Deputy Sheriff and Stenographer of the Tangipahoa Parish Sheriff’s Office, testified that at approximately 4:00 P.M., July 27, 1960, she took down in shorthand statements of the defendant made in response to questions propounded by the Assistant District Attorney, Lennie Yokum; that Deputy Sheriff Mervin R. Falcon was also present. Mrs. Watson further testified that the statements were made freely and voluntarily, and that there was no duress, intimidation or force or threats used to obtain the statements; that all of the responses to the questions were the utterances of the defendant. She stated that she later transcribed the statements and gave them to Chief Deputy Simmons, who had them signed. With respect to the introduction of the confession, “I hereby make the following statement of my own free will and accord, having received no threats or promises of any kind * * and the closing, “I have made the preceding four and one-half typewritten pages of my own free will and accord * * Mrs. Watson testified that the defendant was told that such were to be placed in the confession.
 

 Deputy Sheriff Mervin R. Falcon testified that he was present throughout the entire taking of the statement of the defendant; that it was given freely and voluntarily, and that there were no promises, inducements, threats, or intimidations. He corroborated the testimony of Mrs. Watson, saying that he had examined the statement, and that other than the opening and closing paragraphs it contained the words of the defendant. He said that the defendant was apprised of his rights before he made the statement.
 

 Leonard E. Yokum, Second Assistant District Attorney for the Twenty-First Judicial District, testified that he was notified on the morning of July 27, 1960, that the defendant wanted to make a statement; that he arrived at the courthouse after lunch, and in the office of Deputy Simmons he propounded to the defendant the questions set forth in the alleged confession; that the questions were answered freely and voluntarily, there being no threats or duress, intimidations or any promises or inducements made to McAllister. Mr. Yokum affirmed that Mrs. Watson acted as stenographer and that Mervin Falcon was present.
 

 Deputy Hulon Simmons testified that he received the alleged confession from Mrs. Corinne Watson on August 3, 1960, and that he brought it upstairs and let McAllister read it. He said that the defendant read the confession, making no corrections
 
 *73
 
 nor alterations, and then signed it in his presence and in the presence of Deputy Arthur Ricks. He testified:
 

 “A. I came in and told Arthur Ricks, the jailer to bring one of them in the office. He sat down and I gave him the statement and told him that was the statement he had given previously and to read it and sign it if he wanted to.
 

 “Q. In other words, you gave him a choice not to sign it or to sign it?
 

 “A. Definitely so.
 

 “Q. You didn’t get rough with him?
 

 “A. No sir.
 

 “Q. Positively ?
 

 “A. Positively.
 

 Deputy Arthur Ricks affirmed the testimony of Deputy Simmons, stating that he signed the confession as a witness with Deputy Simmons.
 

 An examination of the testimony, supra, impels us to conclude that the State has borne its burden of proving that the alleged confession was made freely and voluntarily. We do not find that any of defendant’s constitutional rights were violated, nor do we find that he was threatened or intimidated; he was offered no promises nor inducements.
 

 Bill of Exceptions No. 7 is without merit.
 

 Bill of Exceptions No. 8 reads in part as follows:
 

 “Be it remembered that on the trial of this cause on the 10th day of June, 1961, the defendant, by his counsel, moved the Court, That the State offered in evidence the testimony of the several Deputy Sheriffs concerning statements and/or confessions made by the defendant. After hearing the testimony, the District Attorney then submitted that the statements were made voluntarily and without promise or hope of reward. The defendant objected to the testimony of these witnesses and on the grounds that the confession and/or statements were made under the influence, fear, duress, intimidation, threats and/or promises by the Sheriff’s Department of Tangipahoa Parish, all as set forth in the Transcript of the Testimony, made part hereof by reference, the Court ruled them admissible to which rulings * * * ”
 

 We have heretofore discussed the written confession in Bill of Exceptions No. 7.
 

 As to the use of the word “statements” in Bill of Exceptions No. 8, it does not appear in the record that the Sheriff or any of his Deputies testified to the content of any oral statement made by the defendant before Mr. Yokum was notified on the morning of July 27, 1960 that defendant wanted to make a statement; nor did the
 
 *75
 
 defendant himself testify to the content of any oral statement he made at that time.
 

 Bill of Exceptions No. 8 is without merit.
 

 Bill of Exceptions No. 9 was reserved to the overruling of the objection of the defendant to the introduction of the confession on the grounds that it was not complete and correct, and that is was not freely and voluntarily given.
 

 In Bill of Exceptions No. 7, we have found that the defendant’s confession was given freely and voluntarily.
 

 Counsel’s attack on the completeness and correctness of ''the confession is directed to the opening and closing paragraphs of the confession, which we have heretofore discussed in Bill of Exceptions No. 7.
 

 “ * * * Written confessions to be admissible in evidence against the accused need not be in any particular form nor in exact language of the accused but are sufficient if the substance of the accused’s statement is taken down. State v. Brasseaux, 163 La. 686, 112 So. 650.” State v. Sheffield, 232 La. 53, 93 So.2d 691. See, State v. Howard, 238 La. 595, 116 So.2d 43; 361 U.S. 875, 80 S.Ct. 138, 4 L.Ed.2d 113.
 

 The instant confession contains the entire substance of the accused’s statement.
 

 Bill of Exceptions No. 9 is without merit.
 

 Bill of Exceptions No. 10 was reserved to the overruling of defendant’s motion for a new trial.
 

 We have examined the motion for a new trial and find that only one of the assignment of errors to the rulings of the trial judge was not covered in our discussions and rulings on Bills of Exceptions Nos. 1 through 9. This assignment avers:
 

 “That the several Deputy Sheriffs, who were the chief witnesses for the State, spent considerable time all during the examination of prospective Jurors with other prospective Jurors, who were either present in Court waiting to be examined or who were served with Jury summons by the said Deputy Sheriff; that they spent considerable time with the Jurors that had been selected before the trial, spending the night in the same room with them, taking them out for meals, making telephone calls and delivering messages for them; that the same State’s witnesses spent considerable time with the Jury during the conduct of the trial and after the completion of the trial and during the time when the Jury was deliberating on their verdict; that all during this time, the said witnesses had occasion to and did speak to the Jurors, who had been selected, and to the prospective Jurors prior to their examination; and that they had the
 
 *77
 
 opportunity to and did influence the said Jury, in their verdict; that the amount of contact between the State’s Chief Witnesses and the Jury was unfair and improper conduct on the part of the State and was prejudicial to the rights of the accused.”
 

 We have carefully read the testimony of record pertaining to the above averment and find that neither the Sheriff nor any Deputy discussed this case with any of the witnesses after it was called for trial. There was no Deputy in the jury room when the jury was deliberating. Chief Deputy Hulon Simmons testified that he assigned duties to the Deputies, and that he gave no thought to assigning Deputies who were not witnesses to work on the trial of this case. Sheriff Sanders testified that to the best of his knowledge he and his office handled this case in an efficient and impartial manner; that he did not think it was of importance that Deputy Sheriffs who were listed as witnesses in this case were the Deputies selected to spend the night with the jury and worked the trial; that to the best of his knowledge this case was held in the same manner as any of the other cases of the same magnitude during his term of office as Sheriff.
 

 LSA-R.S. 15:394 provides that, “From the moment of the acceptance of any juror until the rendition of verdict or the entry of a mistrial, as the case may be, the jurors shall be kept together under the charge of an officer in such a way as to be secluded from all outside communication; * * In State v. Davis, 237 La. 577, 111 So.2d 778, we -said that the purpose of the section is to keep the jurors from outside influence, the separation contemplated being separation from the public or outside contact.
 

 The defendant has not shown, and we do not find that the manner in which the jury was handled in the instant prosecution was prejudicial to the defendant; there was no showing that any Deputy was present during the deliberations of the jury. The trial judge states in his per curiam, by which we are bound, there being no evidence to the contrary (State v. Brown, 242 La. 384, 136 So.2d 394, State v. Roy, 220 La. 1017, 58 So.2d 323):
 

 “The evidence showed that there were' several Deputies who were not named as witnesses in the case but who had had various contact in some manner with the case who were available to serve during the trial of the case, and it is to the knowledge of the Court that some of them did. The Deputies were interchanged at various times and neither the Court nor the District Attorney or the Defense Counsel paid any particular attention to the change of Deputies. The evidence showed that the Sheriff’s office was on
 
 *79
 
 a 24 hour basis, that the Jailer was constantly required to be in the Jail particularly from 4 o’clock in the afternoon until 8 o’clock the next morning when the office was closed to answer radio calls and in general to have custody of the prisoners. The various Deputies who were summoned as witnesses had to be present in Court in order to testify and the remaining Deputies were busy performing the other duties of the Sheriff’s Office, such as serving witness summons, jury summons, civil citations and seizures, transferring prisoners to the insane asylum and general patrol duties in the Parish.
 

 “There was no request made to have the Deputies who were not witnesses be placed in charge of the Jury, nor was any objection made to the fact that various Deputies who happened to be witnesses were placed in charge of the Jury at various times.
 

 “There was no objection made to the testimony of the Deputies who testified as witnesses and who had been in charge of the Jury. Further there was no evidence of any attempt on the part of the Deputies or anyone else to unduly influence the Jury. The three Jurors who testified on the Motion for a New Trial all testified that no one of the Deputies ever discussed the case with them or attempted to influence them in any manner.”
 

 Bill of Exceptions No. 10 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . Articles 10 and 11 of the motion to quash state: “That the indictment deprived the defendant of his right under the Constitution of the United States and of
 
 the
 
 State of Louisiana in failing to inform him of the charges leveled against him and leaves the accused party in total darkness as to the acts of omission or commission constituting the basis of the accusation and making it impossible for him to prepare his defense unless he chooses to waive, if this were possible, all of the rights under the constitution.”
 

 “That the indictment as drawn under the simplified form as specified under Article 235 of the Code of Criminal Procedure commonly known as the short form of indictment, is defective in that the definition of murder, the conclusion of law charged, is broken down in two (2) main parts, one when the offender has specific intent to inflict great bodily harm or to kill; or two when the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery or simple robbery even though ho has no' intent to kill. The second part of the definition is broken down into six (6) distinct felonies, each of which can bo likewise committed in several different ways-as enumerated in the code and hence defendant has no way of knowing what the grand jury intends to charge him with and is wholly and completely unable Lr properly prepare his defense to the charge set forth in this indictment',”
 

 [2]
 

 . Calvin Newman Camey was tried jointly with the defendant, found guilty, and sentenced to imprisonment in the State Penitentiary at hard labor for the term of the balance of his natural life; he has not appealed to this Court.
 

 [3]
 

 . Defendant relies on the following statement: “Even the specific simplified forms as provided by Article 235 prior to the 1944 amendment have not proved sufficient, or been upheld in all instances. The pitfalls with which this procedure is fraught was very succinctly pointed up by the majority in People v. Bogdanoff, supra (254 N.Y. 16, 171 N.E. [890] 895 [69 A.L.R. 1378]), thusly:
 
 ‘The new forms may at times prove unwise. Doubtless if district attorneys insist upon using the form employed here, they will at times be unable to meet a challenge to the sufficiency
 
 •
 
 of the description of a crime.
 
 Extraneous .evidence may still leave uncertain at times whether an indictment for “murder” or “larceny” covers one crime or several. * * *
 
 There must in every case be identity of accusation, and the indictment must describe the crime upon ivhich the accused is held. It is the duty of the district attorney to formulate that description with such precision that it cannot be successfully challenged.’
 
 (Emphasis supplied.)’?- -
 

 [4]
 

 . Chief Justice John B. Horn-net was the organ of the Court in both the Straughan case and the Eyer case.
 

 [5]
 

 . Counsel’s motion was not in writing (LSA-R.S. 15:321), but in the motion for psychiatric examination counsel requested that the proceedings be stayed until such time as a report was received regarding the defendant’s mental condition.
 

 [6]
 

 . “The judge may, at any stage of the trial, order the sequestration of the witnesses. As soon as such order shall have been given it shall be the duty of the sheriff to take charge of the witnesses and to remove them to a place where they shall not be able to see or hear any of the proceedings taking place in court. Nor shall there be, while they shall be sequestered, any communication between them and others or between them and any witness who shall have testified. Any disregard of these provisions by a witness shall disqualify him from testifying and shall subject him to punishment for contempt; provided, that the judge may in all cases, in his discretion, permit any witness to testify; provided, further, that the issuance of such order shall not deprive either party of the right of calling or examining as a witness one who shall not have obeyed the order of sequestration, when such party shall show that the witness remained in court or otherwise disobeyed the order without the knowledge and without the connivance of the party calling him.”